FILED

2008 MAR 24 P 3: 13

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1  LATHAM & WATKINS LLP
     Daniel Scott Schecter (SBN 171472)
2    Colin B. Vandell (SBN 240653)
   633 West Fifth Street, Suite 4000
3  Los Angeles, CA 90071-2007
   Telephone: (213) 485-1234
4  Facsimile: (213) 891-8763

5  O'MELVENY & MYERS LLP
     George A. Riley (SBN 118304)
6  275 Battery Street, Suite 2600
   San Francisco, CA 94111
7  Telephone: (415) 984-8741
   Facsimile: (415) 984-8701
8
   Attorneys for Non-Party Deponent Steve Jobs
9
                  UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13  CV 08 - 80040 MISC PVT RMW

14  IN THE MATTER OF A DEPOSITION         Case No. _____
    SUBPOENA SERVED IN:
15
    F.B.T. PRODUCTIONS, LLC AND EM2M,     [Related to Case No. CV07-3314 PSG (MANx)
16  LLC,                                  (C.D. Cal.)]

17         Plaintiffs,
                                          **NOTICE OF MOTION AND MOTION FOR
18      v.                                PROTECTIVE ORDER TO QUASH "APEX"
                                          DEPOSITION SUBPOENA;
19  AFTERMATH RECORDS, INTERSCOPE         MEMORANDUM OF POINTS AND
    RECORDS, UMG RECORDING, INC.,         AUTHORITIES IN SUPPORT THEREOF**
20  AND ARY, INC.,
                                          [Declarations of Colin B. Vandell and Kevin
21         Defendants.                    Saul; and Exhibits filed concurrently herewith]

22                                        Hearing: [To Be Set By Court]
                                          Date:    TBD
23                                        Time:    TBD
                                          Place:   Courtroom TBD
24                                                 280 South 1st Street
                                                   San Jose, CA 95113
25

26

27

28

LATHAM&WATKINS  LA\1835369
ATTORNEYS AT LAW
LOS ANGELES



1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2  NOTICE IS HEREBY GIVEN THAT, on _____, 2008, at _____, or as soon
3  thereafter as the matter may be heard, at the United States District Court for the Northern District
4  of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, non-party
5  deponent Steve Jobs will and hereby does move for an order quashing a deposition subpoena and
6  preventing his deposition by Plaintiffs F.B.T. Productions, LLC and Em2M, LLC ("Plaintiffs").

7  This Motion is brought on the grounds that the deposition is impermissibly
8  burdensome under Federal Rules of Civil Procedure 26 and 45, particularly because Mr. Jobs and
9  Apple Inc. ("Apple") are not parties to this dispute, Mr. Jobs has no personal knowledge
10 regarding the issues raised in the dispute, and Plaintiffs have not met, and cannot meet, the high
11 burden of justifying an "apex" deposition of a non-party.

12 This motion is based on this Notice of Motion; the attached Memorandum of
13 Points and Authorities; the concurrently filed Declarations of Colin B. Vandell and Kevin Saul;
14 the other papers on file herein; and such other matters as may be considered at the hearing. This
15 motion follows after a good faith conference between counsel for Mr. Jobs and for Plaintiffs
16 pursuant to Federal Rule of Civil Procedure 26(c).

17 Dated: March 24, 2008

LATHAM & WATKINS LLP
Daniel Scott Schecter
Colin B. Vandell

By *Daniel Scott Schecter /cv*
Daniel Scott Schecter
Attorney for Non-Party Deponent Steve Jobs

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND .................................................................................... 2

    A.    Procedural Background. ................................................................................ 2

    B.    Mr. Jobs, The Founder And CEO Of Apple, Has An Extremely Demanding Schedule. ................................................................................ 3

III. ARGUMENT ............................................................................................................. 5

    A.    The Federal Rules Prohibit Harassing And Burdensome Discovery. ............ 5

    B.    The Jobs Deposition Subpoena Must Be Quashed. ...................................... 6

        1.    The Deposition of Mr. Jobs Is Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence. .................... 6

        2.    The Discovery Sought From Mr. Jobs As A Non-Party Is Unduly Burdensome. ............................................................................ 7

        3.    Plaintiffs Have Failed To Meet The High Burden Of Justifying An Apex Deposition. ..................................................... 8

IV. CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,
  244 F.3d 189 (1st Cir. 2001) .................................................................................. 8

Baine v. General Motors Corp.,
  141 F.R.D. 332 (M.D. Ala. 1991) ........................................................................ 5, 9

Celerity, Inc. v. Ultra Clean Holding, Inc.,
  2007 U.S. Dist. LEXIS 8295 ................................................................................. 9

Dart Industries Co. Inc. v. Westwood Chemical Co., Inc.,
  649 F.2d 646 (9th Cir. 1980) ............................................................................... 6, 8

F.B.T. Productions, LLC v. Aftermath Records,
  Case No. CV07-3314 PSG (MANx) (C.D. Cal.) ................................................... 1

Jack Frost Lab., Inc. v. Physicians & Nurses Mfg. Corp.,
  1994 U.S. Dist. LEXIS 261 (S.D.N.Y. 1994) ......................................................... 8

Katz v. Batavia Marine & Sporting Supplies, Inc.,
  984 F.2d 422 (Fed. Cir. 1993) .............................................................................. 7, 8

Lewelling v. Farmers Ins. of Columbus, Inc.,
  879 F.2d 212 (6th Cir. 1989) ................................................................................ 1, 6

Mulvey v. Chrysler Corp.,
  106 F.R.D. 364 (D.R.I. 1985) ....................................................................... 5, 8, 9, 10

People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,
  107 Cal. App. 4th 516 (2003) ................................................................................ 7

Salter v. Upjohn Co.,
  593 F.2d 649 (5th Cir. 1979) ............................................................................ 1, 6, 9

Surfvivor Media, Inc. v. Survivor Productions,
  406 F.3d 625 (9th Cir. 2005) ................................................................................. 7

Thomas v. Int'l Bus. Machs.,
  48 F.3d 478 (10th Cir. 1995) ............................................................................ 1, 6, 9

WebSideStory, Inc. v. NetRatings, Inc.,
  2007 U.S. Dist. LEXIS 20481 (S.D. Cal. 2007) ..................................................... 8

## STATUTES

Cal. Civ. Code § 1638 ..................................................................................................... 7

Cal. Civ. Code Section 1639 .......................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
LA\1835369

iii

**RULES**

Fed. R. Civ. P. 26 .................................................................................................... 5, 6, 7, 8

Fed. R. Civ. P. 26(b) ............................................................................................................ 7

Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 7

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................................ 5

Fed. R. Civ. P. 26(c) ............................................................................................................ 6

Fed. R. Civ. P. 45 ........................................................................................................ 3, 5, 6

Fed. R. Civ. P. 701 .............................................................................................................. 7

Fed. R. Civ. P. 702 .............................................................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Non-party Steve Jobs, the CEO of Apple Inc. ("Apple"), brings this motion to quash a deposition subpoena that was served in blatant disregard of the well-established doctrine precluding "apex" depositions of senior corporate officials. Recognizing the burden imposed on corporations by depositions of senior corporate officials, federal courts have prohibited "apex" depositions of such officials, even where their corporate employers are parties to the pending litigation. See, e.g., Thomas v. Int'l Bus. Machs., 48 F.3d 478, 481 (10th Cir. 1995); Salter v. Upjohn Co., 593 F.2d 649, 652 (5th Cir. 1979); Lewelling v. Farmers Ins. of Columbus, Inc., 879 F.2d 212 (6th Cir. 1989).

Here, neither Mr. Jobs nor Apple is a party to the underlying proceeding, F.B.T. Productions, LLC v. Aftermath Records, Case No. CV07-3314 PSG (MANx) (C.D. Cal.) ("FBT Action"). Plaintiffs have made no showing whatsoever to justify the extraordinary measure of deposing the extremely busy CEO of a non-party.

The FBT Action raises breach of contract claims requiring the interpretation of certain agreements between a recording artist, music publisher and record labels. Mr. Jobs and Apple are not parties to these agreements and were not involved, directly or indirectly, in negotiating or drafting these agreements. Plaintiffs' sole purported reason for seeking Mr. Jobs's deposition arises from an essay he wrote a year ago entitled *Thoughts on Music*. In this essay, Mr. Jobs used the term "license," not in reference to a particular agreement, but as a general term referring to digital distribution of music. Plaintiffs have seized on the term "license" as somehow relevant to their dispute over the interpretation of their agreements with the music publisher and record label defendants. Because Mr. Jobs's opinions on the digital distribution of music have no bearing on these contractual interpretation issues, and a deposition would be very disruptive to his demanding schedule, the subpoena should be quashed and the deposition precluded.

## II.

## FACTUAL BACKGROUND

### A. Procedural Background.

On May 21, 2007, Plaintiffs F.B.T. Productions, LLC and Em2M, LLC commenced the FBT action against Defendants Aftermath Records, Interscope Records, UMG Recordings, Inc., and Ary, Inc. (the "UMG Defendants"), asserting claims for breach of contract and declaratory judgment. (Vandell Decl., ¶ 2.) Plaintiffs filed a First Amended Complaint ("FAC") on June 13, 2007, again asserting breach of contract and declaratory judgment claims. (Vandell Decl., ¶ 3; Ex. A (First Amended Complaint).)

The gravamen of the FAC is the assertion that the UMG Defendants have underpaid royalties to Plaintiffs with respect to master recordings of performances by Marshall Mathers, professionally known as "Eminem." (Vandell Decl., ¶ 4; Ex. A.) Plaintiffs allege that the UMG Defendants should pay Plaintiffs royalties for digital distribution of Eminem's recordings (the "Eminem Masters") under the "licensing" provisions of agreements between Plaintiffs and the UMG Defendants (the "UMG Agreements"). Instead, the UMG Defendants have allegedly calculated the royalties under the less favorable "distribution" provisions of the UMG Agreements. (Vandell Decl., ¶ 5; Ex. A.)

*Mr. Jobs and Apple are not parties in the FBT Action, are not parties to any of the UMG Agreements, and had no role whatsoever in negotiating, drafting, or executing the UMG Agreements.* (Saul Decl., ¶¶ 2-4.) Mr. Jobs is not mentioned in the original complaint or the FAC. The only reference to Apple is the FAC's allegation that the UMG Defendants "licensed" the Eminem Masters for distribution through Apple's iTunes and other digital service providers, and sales by such services should yield a 50% royalty rate for Plaintiffs under the UMG Agreements. (Vandell Decl., ¶ 6; Ex. A.) Apple has no agreements with Plaintiffs regarding the Eminem Masters. Content owned by UMG is sold through iTunes pursuant to a series of confidential master distribution agreements with Apple entitled "Digital Music Download Sales Agreements" ("Download Agreements"). The Download Agreements relate generally to recordings owned by UMG and do not specify Eminem or other individual artists or

specific content. (Saul Decl., ¶ 5.)

On January 11, 2008, Plaintiffs issued a subpoena for documents from Apple (the "Apple Document Subpoena") with numerous broad, irrelevant, and vague requests.[1] (Vandell Decl., ¶ 7; Ex. B (Apple Document Subpoena).) The Apple Document Subpoena demanded, *inter alia*, any and all agreements – and all communications and other documents relating in any way to such agreements – between Apple and UMG regarding music distribution. (Vandell Decl., ¶ 9; Ex. B.) The extent of this demand is staggering: UMG has provided more than 400,000 songs for sale on iTunes in the United States under its confidential Download Agreements with Apple. (Saul Decl., ¶ 6.)

Apple has conferred numerous times with Plaintiffs in a good faith attempt to resolve the overbreadth of the Apple Document Subpoena. (Vandell Decl. ¶ 10.) Apple offered to provide, subject to protective order, the confidential Download Agreements that apply to the distribution of the Eminem Masters on iTunes. (Vandell Decl., ¶ 11.) Plaintiffs nevertheless have indicated their intention to file a motion to compel. (Vandell Decl., ¶ 12.) During this meet and confer process, Plaintiffs served a deposition subpoena on Apple CEO Steve Jobs (the "Jobs Deposition Subpoena"). (See Ex. D (Jobs Deposition Subpoena).) Despite Apple's efforts to resolve this discovery dispute, including its offer of the Download Agreements, Plaintiffs insist on deposing Mr. Jobs.

**B.    Mr. Jobs, The Founder And CEO Of Apple, Has An Extremely Demanding Schedule.**

A pioneer of the personal computer revolution and one of the world's best known companies, Apple was founded by Mr. Jobs and Steve Wozniak in Mr. Jobs's garage in 1976. (Saul Decl., ¶ 7.) After leaving the company in 1986, Mr. Jobs returned in 1997 to serve on Apple's Board of Directors and later as CEO. (Saul Decl., ¶ 8.) As Apple's CEO, Mr. Jobs currently has responsibilities for a multinational company with more than 20,000 permanent and

---

[1] The Apple Document Subpoena was served on Apple in violation of Federal Rule of Civil Procedure 45; no prior notice was provided to Defendants. (Vandell Decl., ¶ 8; Ex. C (Letter from UMG Defendants' counsel to Plaintiffs' counsel, dated Jan. 22, 2008).)

temporary employees worldwide and fiscal year 2007 revenues of $24 billion. (Saul Decl., ¶ 9) Apple markets and develops a wide variety of groundbreaking products and services, from its Mac OS X operating system to its revolutionary iPhone. (Saul Decl., ¶ 10.) Mr. Jobs is responsible not only for Apple's overall strategy and operations, he also plays a key role in the design and development of Apple's products. (Saul Decl., ¶ 11.)

In 1986, Mr. Jobs founded and became CEO of Pixar Animation Studios, a computer animation company known for its award-winning movies such as *Toy Story* and *Finding Nemo*. (Saul Decl., ¶ 12.) In 2006, The Walt Disney Company acquired Pixar. (Saul Decl., ¶ 13.) As a result of this acquisition, Mr. Jobs serves as a director of The Walt Disney Company. (Saul Decl., ¶ 14.)

Mr. Jobs is extremely busy meeting the diverse duties and requirements of his roles as the chief executive officer and director of Apple and a director of The Walt Disney Company. Mr. Jobs's time is an important asset, and he carefully manages his schedule to ensure that he can devote the necessary energy and attention to the myriad challenges facing both companies. (Saul Decl., ¶ 15.)

During the meet and confer process, Plaintiffs' sole explanation for the relevance of Mr. Jobs's deposition is the fact that he authored the essay, *Thoughts on Music*. (Vandell Decl., ¶ 13; Ex. E (*Thoughts on Music* essay).) Plaintiffs have seized on a single sentence in the essay: "Since Apple does not own or control any music itself, it must license the rights to distribute music from others, primarily the 'big four' music companies." (See Ex. E (*Thoughts on Music* essay).) Plaintiffs assert that the deposition would seek to explore Mr. Jobs's interpretation of the term "license." (Vandell Decl., ¶ 14.) *Thoughts on Music*, however, is a discussion of Mr. Jobs's views on the current status and prospects of "digital rights management" systems used by Apple and other companies to prevent unauthorized copying of music. (Saul Decl., ¶ 16; Ex. E.) The essay, which is intended for a popular audience, does not constitute a legal opinion or analysis of contractual rights and obligations. It does not discuss the FBT Action, the UMG Agreements or any other arrangements between artists and record companies. Nor does it analyze the structure of agreements between record labels and digital

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\1835369

4

service providers. (Saul Decl., ¶ 17; Ex. E.) In short, the essay has no bearing on the contract disputes between Plaintiffs and the UMG Defendants.

## III.

## ARGUMENT

### A. The Federal Rules Prohibit Harassing And Burdensome Discovery.

Under Federal Rule of Civil Procedure 26 ("Rule 26"), courts have the obligation to limit discovery to "avoid . . . harassment, expense, and burdensomeness." Baine v. General Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991) (deposition subpoena of vice president of General Motors quashed). Rule 26 "specifically gives the Court authority to limit discovery if it determines that the discovery sought is obtainable from other sources, that is, those that are more convenient and less burdensome." Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985) (deposition subpoena of Chrysler Chairman quashed). Courts are required to limit discovery if the burden or expense outweighs the demanded discovery's probable benefits. See Fed. R. Civ. P. 26(b)(2)(C)(iii). Federal Rule of Civil Procedure 45 ("Rule 45") also underscores a court's duty to prevent undue burden and expense imposed by a deposition subpoena: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."

Federal courts have applied these principles to protect non-parties from burdensome discovery. See Dart Industries Co. Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980) (discovery should be "limited" in order to "protect" non-parties from "harassment, inconvenience, or disclosure of confidential documents.") Federal courts have also consistently applied these principles to preclude "apex" depositions of high corporate officials, even where their corporate employees are parties to the underlying litigation. See, e.g., Thomas, 48 F.3d at 481 (protective order was properly granted that prohibited the deposition of IBM's Chairman); Salter, 593 F.2d at 652 (deposition subpoena served on the president of the defendant

1 company; district court correctly issued a protective order stopping the apex deposition);

2 Lewelling, 879 F.2d at 218 (protective order properly granted to prohibit the deposition of the

3 Chairman and CEO of the defendant company's subsidiary). Non-parties may contest discovery

4 demands by seeking a protective order in the court where an action is pending, or – in the case of

5 deposition subpoenas – in the court for the district where the deposition is scheduled to be taken.

6 See Fed. R. Civ. P. 26(c).

### B. The Jobs Deposition Subpoena Must Be Quashed.

8 Rules 26 and 45 require that the Jobs Deposition Subpoena be quashed for several

9 reasons. First, the requested discovery is not calculated to lead to the discovery of admissible

10 evidence. Mr. Jobs's opinions as expressed in *Thoughts on Music* have no bearing on the

11 contractual dispute between Plaintiffs and the UMG Defendants. Second, even if Mr. Jobs's

12 opinions had some remote relevance – which they do not – the requested discovery of a non-

13 party must be precluded as unduly burdensome and harassing. Third, Plaintiffs have completely

14 failed to meet the exacting standards required to conduct an apex deposition of Apple's CEO.

#### 1. The Deposition of Mr. Jobs Is Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.

17 Plaintiffs' lawsuit relates to the proper interpretation of agreements between

18 Plaintiffs and the UMG Defendants. Plaintiffs have acknowledged that their sole basis for

19 seeking Mr. Jobs's deposition is to question him about his use of the term "license" in *Thoughts*

20 *on Music*. (Vandell Decl., ¶¶ 13-14.) But any meaning Mr. Jobs attaches to the word "license" –

21 in *Thoughts on Music* or otherwise – has no bearing on the meaning of that term as it is used and

22 defined in contracts to which neither Apple nor Mr. Jobs are parties. People ex rel. Lockyer v.

23 R.J. Reynolds Tobacco Co., 107 Cal. App. 4th 516, 525 (2003) ("'The language of a contract is

24 to govern its interpretation' . . . 'When a contract is reduced to writing, the intention *of the*

25 *parties* is to be ascertained from the writing alone, if possible.'") (quoting Cal. Civ. Code §§

26 1638 and 1639) (emphasis added). Mr. Jobs has not been involved in the FBT Action, nor was

27 he or any other Apple employee involved in the drafting of the UMG Agreements between

28 Plaintiffs and the UMG Defendants. (Saul Decl., ¶¶ 2-4.) *Thoughts on Music* is written for a

popular audience and does not purport to analyze any legal relationship between Apple and any record labels. (Saul Decl., ¶ 17.) The deposition testimony Plaintiffs seek is thus wholly irrelevant to their breach of contract claims against the UMG Defendants, and therefore is not reasonably calculated to lead to the discovery of admissible evidence as required by Rule 26. *See* Fed. R. Civ. P. 26(b)(1); Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005).[2] Accordingly, the protective order must be granted.

### 2. The Discovery Sought From Mr. Jobs As A Non-Party Is Unduly Burdensome.

Courts are in broad agreement that non-parties cannot be subjected to discovery demands as broad as may be warranted on parties to the applicable actions. "Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993). As one court observed, "the most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others." Jack Frost Lab., Inc. v. Physicians & Nurses Mfg. Corp., 1994 U.S. Dist. LEXIS 261, at *2 (S.D.N.Y. 1994)).

Mr. Jobs and Apple are not parties in the FBT Action, and neither Apple nor Mr. Jobs had any involvement in the contracts in dispute in that case. As a result, Plaintiffs must meet a high burden to justify any deposition of Mr. Jobs. See Dart Industries, 649 F.2d at 649. Plaintiffs have failed to meet this burden. As discussed above, a deposition of Mr. Jobs is not reasonably calculated to lead to the discovery of evidence relevant to the underlying contract dispute. But even if Mr. Jobs's views had some remote relevance – which they do not – the value of that testimony is greatly outweighed by the burden, inconvenience and potential for

---

[2] To the extent Plaintiffs seek to elicit opinion testimony from Mr. Jobs for no other reason than his position as an influential and well-known executive in the technology industry, and as a CEO of a prominent company in the field of digital distribution of audio-visual content, such testimony would be inadmissible opinion testimony under Federal Rules of Civil Procedure 701 and 702.

1   harassment posed by the subpoenaed deposition. See, e.g., Ameristar Jet Charter, Inc. v. Signal
2   Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) ("a party may not undertake wholly
3   exploratory operations in the vague hope that something helpful will turn up") (protective order
4   issued to quash deposition subpoenas served on four employees of a non-party). On these
5   grounds alone, a protective order should issue and the subpoena should be quashed.

### 3. Plaintiffs Have Failed To Meet The High Burden Of Justifying An Apex Deposition.

8   Courts have precluded depositions of senior employees because of the manifest
9   potential for harassment, expense, and other burdens posed by such depositions. See, e.g.,
10  WebSideStory, Inc. v. NetRatings, Inc., 2007 U.S. Dist. LEXIS 20481 at *6 (S.D. Cal. 2007)
11  ("[W]hen a party seeks to take the deposition of an official at the highest level or 'apex' of a
12  corporation, the court may exercise its authority under the federal rules [i.e. Rule 26] to limit
13  discovery"); Mulvey, 106 F.R.D. at 365 (apex depositions have "become an abusive tool in the
14  hands of certain attorneys; the end result is the enactment of procedural rules to curb such
15  practices") (protective order issued that prohibited the apex deposition of Chrysler Chairman Lee
16  Iacocca). Here, the showing required for an apex deposition is significantly higher than in a
17  typical litigation because neither Mr. Jobs nor Apple is a party to the FBT Action, nor did they
18  have any involvement in, or knowledge of, the underlying events. See Batavia Marine, 984 F.2d
19  at 424 (non-party status constitutes a burden that cuts against the permissibility of a subpoena).
20  Thus, only the most compelling grounds would justify such a deposition. Plaintiffs, however,
21  have failed to provide any basis for such an extraordinary request.
22  Courts that have addressed apex deposition subpoenas typically focus on (i)
23  whether a more efficient way of procuring information can be followed; and (ii) whether the
24  subpoenas aim to harass their targets. See, e.g., Mulvey, 106 F.R.D. at 365-66. Plaintiffs'
25  subpoena to Mr. Jobs fails on both counts.
26  It is wholly inefficient and burdensome for Plaintiffs to require Mr. Jobs's
27  participation in a deposition on the subject matter that Plaintiffs insist on covering. When a
28  "high-level decision maker removed from the daily subjects of the litigation has no unique

1  personal knowledge of the facts at issue, a deposition of the official is improper." Celerity, Inc.
2  v. Ultra Clean Holding, Inc., 2007 U.S. Dist. LEXIS 8295 at *8; Thomas, 48 F.3d at 483; Baine
3  v. General Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991). This requirement is stringently
4  enforced when "the information sought in the deposition can be obtained through less intrusive
5  discovery methods." Celerity, 2007 U.S. Dist. LEXIS 8295 at *8; Salter, 593 F.2d at 651.

6        Mr. Jobs does not possess the "unique personal knowledge" necessary to justify
7  an apex deposition; indeed, *he does not possess any personal knowledge relevant to the FBT*
8  *Action*. Celerity, 2007 U.S. Dist. LEXIS 8295 at *8; Thomas, 48 F.3d at 483; Baine, 141 F.R.D.
9  at 334. Mr. Jobs is the chief executive of a large, multinational corporation with products
10 ranging from personal computers, to mobile communication devices, to portable digital music
11 players, to online music services, as well as a variety of related software, peripherals, and
12 networking solutions. (Saul Decl., ¶ 9.) Mr. Jobs is the epitome of a "high-level decision
13 maker" who has no knowledge – much less "unique personal knowledge" – of the issues in
14 dispute in Plaintiffs' lawsuit. See, e.g., Celerity, 2007 U.S. Dist. LEXIS 8295 at *8 (N.D. Cal.
15 2007).

16       Courts also widely recognize that apex deposition subpoenas are particularly
17 suspect because of their potential for harassment. See, e.g., id. ("Virtually every court that has
18 addressed deposition notices directed at an official at the highest level or 'apex' of corporate
19 management has observed that such discovery creates a tremendous potential for abuse or
20 harassment"); Mulvey, 106 F.R.D. at 365-66. The circumstances surrounding Plaintiffs'
21 subpoena strongly suggest an improper, retaliatory motive. Only after Apple objected to
22 Plaintiffs' extremely overbroad request for all documents relating to UMG, did Plaintiffs serve
23 the Jobs Deposition Subpoena.

24       In short, Plaintiffs have failed to meet the extremely high burden required to
25 justify an "apex" deposition, particularly of a non-party who has no personal knowledge of the
26 contractual issues in the underlying dispute.

27
28

LATHAM*WATKINS  LA\1835369
ATTORNEYS AT LAW
LOS ANGELES

## IV.

## CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court grant its motion for protective order and prohibit the deposition of Steve Jobs.

Dated: March 24, 2008

LATHAM & WATKINS LLP
Daniel Scott Schecter
Colin B. Vandell

By _____
Daniel Scott Schecter
Attorney for Non-Party Deponent Steve Jobs

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Latham & Watkins LLP, 633 West Fifth Street, Suite 4000, Los Angeles, California 90071. On March 24, 2008, I caused the foregoing to be served:

**NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER TO QUASH "APEX" DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

    I caused the above document(s) to be deposited for facsimile transmission in accordance with the office practice of Latham & Watkins LLP for collecting and processing facsimiles. I am familiar with the office practice of Latham & Watkins LLP for collecting, processing, and transmitting facsimiles, which practice is that when a facsimile is deposited with the Latham & Watkins LLP personnel responsible for facsimiles, such facsimile is transmitted that same day in the ordinary course of business. The facsimile of the above document(s) was transmitted to the following parties: See the attached Facsimile List.

**X**    I caused a sealed envelope or package containing the document(s) to be placed in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the United States Postal Service for receipt of U.S. Mail, with U.S. Mail postage paid, addressed to all parties listed on the attached Service List.

    I caused such envelope to be delivered by Federal Express or Hand Delivery to the offices of the addressee(s). See attached Service List.

    I cause a pdf version of this document to be delivered via electronic mail to the attached Service List.

    I declare under penalty of perjury that the above is true and correct. Executed on March 24, 2008 at Los Angeles, California.

                                                 Colleen M. Rico

Service List

Mark L Block
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd, 19th Fl
Los Angeles, CA 90067

Paul H Duvall
King and Ballow
9404 Genesee Avenue, Suite 340
La Jolla, CA 92037-1355

Richard S Busch
King & Ballow
315 Union St, Ste 1100
Nashville, TN 37201

Glenn D Pomerantz
Munger Tolles & Olson
355 S Grand Ave, 35th Fl
Los Angeles, CA 90071-1560