1    LATHAM & WATKINS LLP
     DANIEL SCOTT SCHECTER (S.B. #171472) - daniel.schecter@lw.com
2    COLIN B. VANDELL (S.B. #240653) - colin.vandell@lw.com
     633 West Fifth Street, Suite 4000
3    Los Angeles, California 90071-2007
     Telephone:  (213) 485-1234
4    Facsimile:  (213) 891-8763

5    O'MELVENY & MYERS LLP
     GEORGE A. RILEY (S.B. #118304) - griley@omm.com
6    Embarcadero Center West
     275 Battery Street, Suite 2600
7    San Francisco, California 94111-3305
     Telephone:  (415) 984-8741
8    Facsimile:   (415) 984-8701

9    Attorneys for Non-Party Deponent
     Steve Jobs

10

                    UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14   IN THE MATTER OF A DEPOSITION          Case No. 08-80040 Misc. RMW (PVT)
     SUBPOENA SERVED IN:
15                                          [Related to Case No. CV 07-3314 PSG
     F.B.T. PRODUCTIONS, LLC AND EM2M,      (MANx) (C.D. Cal.)]
16   LLC,
                                            **NON-PARTY STEVE JOBS'S**
17                  Plaintiffs,             **OBJECTION TO ORDER DENYING**
                                            **MR. JOBS'S MOTION FOR**
18            v.                            **PROTECTIVE ORDER TO QUASH**
                                            **"APEX" DEPOSITION SUBPOENA**
19   AFTERMATH RECORDS, INTERSCOPE
     RECORDS, UMG RECORDING, INC., and
20   ARY, INC.,

21                  Defendants.

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION ........................................................................................... 1

4    II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................... 1

     III.  ARGUMENT ................................................................................................... 4
5
           A.    The Order Is Contrary to the Law Limiting Apex Depositions ............ 4
6
                 1.    Steve Jobs Does Not Possess Unique Personal Knowledge of Any
7                      Relevant Fact........................................................................................ 4

8                            a.    Mr. Jobs's Execution of One Download Agreement Does
                                   Not Support a Finding That He Has Relevant Personal
                                   Knowledge, Much Less Unique Knowledge ................................. 5
9
                             b.    Thoughts on Music Does Not Support a Finding That
10                                 Mr. Jobs Has Relevant Personal Knowledge, Much Less
                                   Unique Knowledge ....................................................................... 6
11
                             c.    Mr. Jobs's Subjective Understanding of the Download
                                   Agreements Is Irrelevant............................................................. 7
12
                 2.    The Order Is Contrary to Law Because It Permits the Deposition of
13                     a Non-Party Apex Witness Without a Showing of Exhaustion of
                       Other Sources ...................................................................................... 9
14
           B.    Because Plaintiffs Failed to Raise Mr. Jobs's Participation in Executing the
                 Download Agreements During the Meet and Confer Discussions, This
15               Court Should Consider the Additional Factual Declarations ............................ 10

16   IV.   CONCLUSION ............................................................................................... 11

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### <u>CASES</u>

4

*Alex Robertson Co. v. Imperial Cas. & Idem. Co.*,
8 Cal. App. 4th 338 (1992) ............................................................................ 8

5

*Baine v. Gen. Motors Corp.*,
6    141 F.R.D. 332 (M.D. Ala. 1991) .................................................................. 10

7    *Brown v. Roe*,
279 F.3d 742 (9th Cir. 2002) .......................................................................... 11

8

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
9    No. C 05-4374 MMC (JL), 2007 WL 205067 (N.D. Cal. Jan. 25, 2007) .......................... 4, 10

10   *Conetta v. Nat'l Hair Care Ctrs., Inc.*,
236 F.3d 67 (2001) ........................................................................................ 11

11

*Dart Indus. Co. v. Westwood Chem. Co.*,
12   649 F.2d 646 (9th Cir. 1980) ........................................................................ 4, 9

13   *Del Campo v. Kennedy*,
236 F.R.D. 454 (N.D. Cal. 2006) ................................................................... 9

14

*Houghton v. Kerr Glass Mfg. Corp.*,
15   261 Cal. App. 2d 530 (1968) .......................................................................... 8

16   *Jack Frost Lab. Inc. v. Physicians & Nurses Mfg. Corp.*,
No. 92 Civ 9264 (MGC), 1994 WL 9690 (S.D.N.Y. Jan. 13, 1994) ..................... 9

17

*Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*,
18   No. CIV A 01 CV 2394, 2002 WL 1870452 (E.D. Pa. July 29, 2002) .................. 7

19   *Morrow v. L.A. Unified Sch. Dist.*,
149 Cal. App. 4th 1424 (2007) ...................................................................... 7

20

*Mulvey v. Chrysler*,
21   106 F.R.D. 364 (D.R.I. 1985) ..................................................................... 6, 10

22   *Nidec Corp. v. Victor Co.*,
__ F. Supp. 2d __, 2007 WL 1994171 (N.D. Cal. July 5, 2007) ...................... 9

23

*Orton v. Embassy Realty Assocs.*,
24   91 Cal. App. 2d 434 (1949) ............................................................................ 8

25   *Ribiero v. Dotson*,
187 Cal. App. 3d 819 (1960) .......................................................................... 8

26

*Salter v. Upjohn Co.*,
27   593 F.2d 649 (5th Cir. 1979) ........................................................................ 10

28

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3      *Thomas v. IBM*,
           48 F.3d 478 (10th Cir. 1995)..................................................................................... 4

4

       *United States v. Howell*,
5          231 F.3d 615 (2000).................................................................................................... 11

6      *Webside Story v. Netratings Inc.*,
           No. 06cv408 WQH (AJB), 2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ................................ 4

7

## STATUTES

8

       Cal. Civ. Code § 1649 ................................................................................................... 8
9
       Cal. Civ. Proc. Code § 1860......................................................................................... 8
10

## RULES

11

       Civ. L.R. 37-1 ................................................................................................................. 2
12
       Civ. L.R. 72-2 ................................................................................................................. 1
13
       Fed. R. Civ. P. 26 ......................................................................................................... 4, 6
14
       Fed. R. Civ. P. 26(b)(2)(C) ......................................................................................... 9
15
       Fed. R. Civ. P. 30(b)(6)................................................................................................. 6
16
       Fed. R. Civ. P. 45(c)(3) ................................................................................................. 9
17
       Fed. R. Civ. P. 72(a)..................................................................................................... 1

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1    **I.     INTRODUCTION**

2             Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Civil L.R. 72-2, non-

3    party Steve Jobs, the CEO of Apple, Inc. ("Apple"), respectfully objects to Magistrate Judge

4    Patricia V. Trumbull's May 1, 2008 Order Denying Non-Party's Steve Jobs' Motion to Quash

5    Subpoena (the "Order").[1]

6             The Order is clearly erroneous and contrary to the well-settled law governing apex

7    depositions and discovery from non-parties.  The underlying litigation, pending in the Central

8    District of California, focuses solely on the interpretation of certain terms in a contract between

9    music artist Eminem and his record company, Universal Music Group.  Neither Mr. Jobs nor

10   Apple is a party to the litigation or to the underlying contract, and Mr. Jobs does not have any

11   knowledge relevant to the dispute.  Plaintiffs, moreover, have not shown that any information

12   pertaining to Apple's distribution of Eminem's music on iTunes is not available through other

13   means or from more knowledgeable witnesses.  Therefore, the Order must be set aside.

14   **II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

15            On May 21, 2007, Plaintiffs F.B.T. Productions, LLC and Em2M, LLC (collectively,

16   "Plaintiffs") commenced an action ("Action") against Defendants Aftermath Records, Interscope

17   Records, UMG Recordings, Inc., and Ary, Inc. (collectively, "Defendants").  On June 13, 2007,

18   Plaintiffs filed a First Amended Complaint ("Complaint") asserting claims for breach of contract

19   and declaratory judgment.  (Vandell Decl. ¶ 3, Ex. A (Complaint).)  The Complaint alleges that

20   Defendants have breached certain agreements (the "UMG Agreements") relating to the payment

21   of royalties for recordings of performances by Eminem (the "Eminem Masters").  (Vandell Decl.

22   ¶ 4.)  According to the Complaint, the UMG Agreements require Defendants to pay royalties at a

23   rate of 50 percent "[o]n masters licensed by us or our licensees to others for their manufacture and

24   sale of records or for any other use."  (Vandell Decl. ¶ 3, Ex. A (Complaint ¶ 29).)  Plaintiffs

25   allege that this provision of the UMG Agreements governs the payment of royalties for the sale of

26   digital downloads of Eminem's recordings.  (Vandell Decl. Ex. A (Complaint ¶ 35.)  Instead,

27

28   [1]    A copy of the Order is attached to the declaration of Colin Vandell as Exhibit I.

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1   Defendants have allegedly calculated the royalties under the "distribution" provisions of the

2   UMG Agreements at a 12 percent royalty rate.  (Vandell Decl. ¶ 5, Ex. A (Complaint ¶ 35);

3   Plaintiffs' Opposition to Motion for Protective Order at 1-2.)

4          Mr. Jobs and Apple are not parties to the Action or to the UMG Agreements.  Mr. Jobs

5   and Apple were not involved in negotiating, drafting, or executing the UMG Agreements, and

6   Apple has no agreements with Plaintiffs specific to the Eminem Masters.  (Saul Decl. ¶¶ 3-5; Cue

7   Decl. ¶¶ 3-4.)  Apple's relationship with Defendants is limited to a series of distribution

8   agreements entitled "Digital Music Download Sales Agreements" (the "Download Agreements").

9   (Saul Decl. ¶ 5; Cue Decl. ¶ 5.)  The Download Agreements provide the terms under which Apple

10  may make electronic digital copies of sound recordings, owned or controlled by the Defendants,

11  available for preview and purchase through Apple's iTunes Store.  (Saul Decl. ¶ 5; Cue Decl.

12  ¶ 5.)

13         On January 11, 2008, Plaintiffs served a document subpoena on Apple consisting of

14  numerous over broad and vague requests (the "Apple Document Subpoena").  (Vandell Decl. ¶ 6,

15  Ex. B (Apple Document Subpoena).)  The subpoena covered matter far beyond the scope of the

16  Action including, *inter alia*, any and all agreements between Apple and UMG Recordings, Inc.

17  regarding the distribution of music, and all communications and other documents relating in any

18  way to such agreements.  (Vandell Decl. ¶ 8, Ex. B (Apple Document Subpoena).)  Apple

19  engaged in meet and confer discussions with Plaintiffs in an effort to negotiate, in good faith, a

20  proper scope of production.  (Vandell Decl. ¶ 9.)  Apple offered to provide a number of

21  documents, including any agreements between Apple and any of Defendants (and any

22  amendments) that pertain to distribution of the Eminem Masters.  (Vandell Decl. ¶ 10.)

23         Plaintiffs refused Apple's offer and instead served a deposition subpoena on Steve Jobs,

24  Apple's CEO (the "Jobs Deposition Subpoena").  (Vandell Decl. ¶ 12, Ex. F (Jobs Deposition

25  Subpoena).)  Plaintiffs also filed a motion to compel further responses to the Apple Document

26  Subpoena in the Central District of California.  (Vandell Decl. ¶ 11.)

27         During the meet and confer discussions required under Civil L.R. 37-1 that preceded

28  Mr. Jobs's Motion for Protective Order, Plaintiffs' sole explanation for the relevance of Mr.

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1   Jobs's deposition was the fact that he authored an essay entitled *Thoughts on Music*. (Vandell

2   Decl. ¶ 13.)  In this essay, Mr. Jobs discusses his views on why Apple uses a digital rights

3   management system to protect content offered through the iTunes Store.  (*See* Vandell Decl. ¶ 14,

4   Ex. H (*Thoughts on Music*).)  The music available through iTunes is subject to various

5   agreements with content owners that require Apple to protect the content from unauthorized

6   distribution.  To emphasize this point, Mr. Jobs observed that because Apple does not own the

7   music, "it must license the rights to distribute music from others."  (*See* Vandell Decl. ¶ 14, Ex. H

8   (*Thoughts on Music*).)  In the essay, Mr. Jobs does not define or use the term "license" in any

9   technical or legal sense, and he does not offer any opinion on the scope of the rights of on-line

10  distributors to sell music content.  (*See* Vandell Decl. ¶ 15, Ex. H (*Thoughts on Music*).)  Mr. Jobs

11  simply uses common terminology to underscore the fact that Apple does not own the music

12  available through its iTunes store but must acquire the rights to distribute that content from

13  others.  (*See* Vandell Decl. ¶ 15, Ex. H (*Thoughts on Music*).)

14      During the meet and confer discussions, Plaintiffs did not – and could not – show that

15  *Thoughts on Music* had any relevance to the Action.  Given Mr. Jobs's numerous responsibilities

16  as the CEO of Apple and the fact that he does not possess any unique knowledge relevant to the

17  Action, Mr. Jobs moved to quash the deposition subpoena on March 24, 2008.

18      During the hearing, Plaintiffs asserted that the deposition of Mr. Jobs was warranted

19  because he executed the original Download Agreement.  Plaintiffs, however, never made this

20  argument during the meet and confer discussions that preceded the hearing.  (Vandell Decl. ¶ 16.)

21      The Order denied the motion for protective order and granted Plaintiffs a two-hour

22  deposition of Mr. Jobs.  The Order states that the "nature of the [Download Agreements are]

23  relevant to the present litigation, because the contract at issue in this litigation provides for

24  different royalty rates depending on whether the recordings covered by the contract are sold or

25  licensed."  (Vandell Decl. Ex. I (Order at 2).)  Citing the fact that Mr. Jobs authored the essay and

26  signed one of the Download Agreements, the Order concludes that "a party's subjective

27  understanding may be relevant to the interpretation of a contract."  (Vandell Decl. Ex. I (Order at

28  2-3).)  Mr. Jobs timely filed an objection to the Order.

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1    **III.    ARGUMENT**

2          The Order should be set aside because it is a complete departure from well-established

3    precedent governing apex depositions and the law governing third-party discovery under Rule 26

4    of the Federal Rules of Civil Procedure.

5          **A.    The Order Is Contrary to the Law Limiting Apex Depositions.**

6          Federal courts routinely protect non-parties, particularly high-level, apex corporate

7    officials, from harassing, inconvenient, and repetitive depositions and discovery.  *See, e.g.*, *Dart*

8    *Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Thomas v. IBM*, 48 F.3d

9    478, 483 (10th Cir. 1995).  The doctrine requires that a party seeking to depose an apex employee

10   must first establish that the deposition is necessary by showing that:  (1) the high-level official

11   possesses unique personal knowledge of relevant facts at issue; and (2) the party seeking the

12   deposition has already exhausted less intrusive discovery methods.  *See Celerity, Inc. v. Ultra*

13   *Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *4 (N.D. Cal. Jan. 25,

14   2007); *Webside Story v. Netratings Inc.*, No. 06cv408 WQH (AJB), 2007 WL 1120567, at *2

15   (S.D. Cal. Apr. 6, 2007).  The Order is contrary to the law and clearly erroneous because it

16   permits the deposition of a non-party, apex witness without any showing that the witness has

17   unique knowledge of relevant facts or that Plaintiffs have exhausted other sources.

18          **1.    Steve Jobs Does Not Possess Unique Personal Knowledge of Any**
             **Relevant Fact.**
19

20          The Order is contrary to law because it permits the deposition to proceed even though

21   Plaintiffs failed to establish that Mr. Jobs has unique personal knowledge of a relevant fact at

22   issue.  Unique personal knowledge "is an essential component of the standard for an apex

23   deposition - [meaning] unique personal knowledge by the high corporate official, unavailable

24   from less intrusive discovery, including interrogatories and the depositions of lower-level

25   employees."  *See Celerity*, 2007 WL 205067, at *8.

26          The Order states:  "[I]t appears that [Steve Jobs] may have first-hand knowledge of a

27   relevant fact."  Mr. Jobs executed a Download Agreement and, according to the Order, there is

28   "at least some reason to believe that Jobs understood the nature" of the Download Agreements

1    based on the *Thoughts on Music* essay.  (Vandell Decl. Ex. I (Order at 2-3).)  The Order's

2    findings are clearly erroneous for at least two reasons.  First, Mr. Jobs does not have unique

3    personal knowledge of the Download Agreements or the provisions relating to the grant of

4    authority to Apple to offer digital downloads of sound recordings.  (Saul Decl. ¶¶ 6, 8; Cue Decl.

5    ¶ 6.)  Second, even if Mr. Jobs had some unique understanding of those provisions – which he

6    does not – his understanding is irrelevant.

7
8           **a.**      **Mr. Jobs's Execution of One Download Agreement Does Not Support a Finding That He Has Relevant Personal Knowledge, Much Less Unique Knowledge.**

9          Mr. Jobs does not have unique personal knowledge of the Download Agreements.  While

10   Mr. Jobs executed one of the several contracts that make up the Download Agreements, he was

11   not involved in negotiating the provisions relating to the scope of Apple's authority to offer

12   Defendants' content on iTunes.  (Saul Decl. ¶ 8; Cue Decl. ¶ 7.)  In fact, Mr. Jobs was not a

13   member of the negotiating team and he did not attend the negotiation sessions.  (Saul Decl. ¶ 6.)

14   Apple's negotiating team consisted of Kevin Saul, Eddy Cue, Bud Tribble, James Higa, and Jeff

15   Robbin.  (Saul Decl. ¶ 6; Cue Decl. ¶ 6.)  The negotiations covered all the details that appeared in

16   the final Download Agreements, including the terms governing the scope of authority granted to

17   Apple for the distribution of content owned by UMG.  (Saul Decl. ¶ 8.)  The structure of the

18   Download Agreements as well as their definitions, terms, and technical requirements were the

19   sole responsibility of the negotiating team.  (Saul Decl. ¶ 8.)  Mr. Jobs's involvement was limited

20   to providing direction in determining high-level business points such as price.  (Saul Decl. ¶ 8.)

21   Mr. Jobs was not involved in drafting or negotiating the provisions contained in the Download

22   Agreements that bear on Apple's authority to offer for sale digital downloads.  Thus, Mr. Jobs

23   does not have unique personal knowledge of the nature or scope of Apple's rights regarding

24   digital downloads.

25         Mr. Cue, Mr. Saul and the other members of the negotiation team are far more familiar

26   with the "nature" of the Download Agreements and have substantially more information

27
28

1    concerning the nature of the relationships between Apple and the Defendants.[2]  (Saul Decl.

2    ¶¶ 6-8; Cue Decl. ¶ 6.)  As Mr. Jobs's counsel suggested at the hearing – and as Plaintiffs have

3    done in other related litigation – Plaintiffs should be required to exhaust these alternative sources

4    of relevant evidence before they seek Mr. Jobs's deposition.  (Cue Decl. ¶¶ 10-13.)  *See* Fed. R.

5    Civ. P. 26; *Mulvey v. Chrysler*, 106 F.R.D. 364, 366 (D.R.I. 1985).  Apple has offered a 30(b)(6)

6    deposition on the Download Agreements as well as the depositions of Mr. Cue and Mr. Saul.

7    Therefore, the law plainly precludes Mr. Jobs's deposition at this time, and the Order must be set

8    aside.

9
10                      **b.**     ***Thoughts on Music* Does Not Support a Finding That Mr. Jobs Has Relevant Personal Knowledge, Much Less Unique Knowledge.**

11          Nothing in *Thoughts on Music* supports the Order's conclusion that Mr. Jobs may have

12    relevant personal knowledge based on the contents of the essay.  (Vandell Decl. Ex. I (Order at

13    2-3).)  In *Thoughts on Music*, Mr. Jobs offers his personal views on the use of digital rights

14    management systems to protect content available through the iTunes Store.  (Vandell Decl. Ex. H

15    (*Thoughts on Music*).)  Mr. Jobs wrote:  "Since Apple does not own or control any music itself, it

16    must license the rights to distribute music from others, primarily the 'big four' music companies."

17    (Vandell Decl. ¶ 14, Ex. H (*Thoughts on Music*).)  This observation simply underscores that

18    Apple does not own the music but must acquire the rights to distribute the content from the

19    owners.

20          This is a far cry from the question at issue in the Action.  The dispute in the Action is over

21    whether Plaintiffs should be paid under the UMG Agreements for music sold and downloaded

22    from the Internet under a royalty rate based on the distribution of "records" or under a royalty rate

23    based on the licensing of ***master*** recordings.  (Vandell Decl. Ex. A (Complaint ¶¶ 29 & 35);

24    Plaintiffs' Opposition to Motion for Protective Order at 1-2.)  The UMG Agreements provide that

25

26    [2]    In fact, Mr. Cue was deposed by Plaintiffs' counsel in lieu of deposing Mr. Jobs in a similar
27    litigation pending in New York.  Mr. Cue was questioned on both the substance of the Download Agreements and on the meaning of the *Thoughts on Music* essay, which he reviewed and provided comments on prior to its publication.  (*See* Cue Decl. ¶¶ 10-13.)  After Mr. Cue's
28    deposition, Plaintiffs' counsel did not seek to depose Mr. Jobs.

1  Plaintiffs are entitled to a special 50 percent royalty (instead of the 12 percent royalty they receive

2  for sales of non-LP records) for "*masters* licensed by us or our Licensees to others *for their*

3  *manufacture and sale of records or for any other use.*"  (Vandell Decl. Ex. A (Complaint ¶ 29).)

4  Any third party selling Eminem's music must have authority from UMG because UMG controls

5  the rights to "manufacture, distribute, sell, and license for sale and distribution those master

6  recordings in various configurations throughout the universe."  (Vandell Decl. Ex. A (Complaint

7  ¶ 26).)  But Mr. Jobs's essay does not demonstrate that he has any knowledge relevant to the

8  Action because the essay does not consider the very distinction upon which the parties are

9  litigating.  *Thoughts on Music* does not address, either explicitly or implicitly, whether Apple

10  licensed a *master* recording for "*manufacture and sale of records or for any other use*" from

11  Defendants within the meaning of the UMG Agreements.

12      The Order's finding that the essay provides "at least some reason to believe that Jobs

13  understood the nature of the iTunes Agreement to be a license rather than a sale" (Vandell Decl.

14  Ex. I (Order at 2)) fails to appreciate that the issue is not one of sale versus license but whether

15  Apple has been granted a license to a master recording for the uses specified in the UMG

16  Agreement.  Mr. Jobs's essay does not begin to address this distinction and thus does not suggest

17  that Mr. Jobs has unique personal information relevant to the Action.

18              **c.      Mr. Jobs's Subjective Understanding of the Download**
                          **Agreements Is Irrelevant.**
19

20      Even if Mr. Jobs had some unique opinion regarding the nature of the authority granted to

21  Apple in the Download Agreements – which he does not – that opinion would be irrelevant to the

22  underlying dispute.  When a third-party contract arguably bears some relevance to litigation,

23  courts have uniformly held that a non-party's *opinion* about the contract is inadmissible and

24  irrelevant as a matter of law.  *See, e.g.*, *Morrow v. L.A. Unified Sch. Dist.*, 149 Cal. App. 4th

25  1424, 1444-45 (2007); *Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. CIV A 01 CV 2394, 2002

26  WL 1870452, at *6 (E.D. Pa. July 29, 2002) (denying discovery of agreements between defendant

27  and third party on ground that they were irrelevant to interpretation of contract between plaintiff

28  and defendant) (citation omitted).  While the Download Agreements may be relevant to determine

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1    whether the Defendants granted Apple rights to "masters licensed by [Defendants] for their

2    manufacture and sale of records or for any other use," as specified in the UMG Agreements, this

3    turns on the legal interpretation of the UMG Agreement and the rights granted in the Download

4    Agreements, not on Mr. Jobs's subjective opinion.

5         The Order states that "there are situations in which a contracting party's subjective

6    understanding may be relevant to the interpretation of a contract," and suggests that *Thoughts on

7    Music* may evidence Mr. Jobs's understanding of the nature of the UMG Agreements.  (Order at

8    2-3 (citing Cal. Civ. Code § 1649).)  This determination is wrong as a matter of law and

9    constitutes clear error.  *See Houghton v. Kerr Glass Mfg. Corp.*, 261 Cal. App. 2d 530, 536-37

10   (1968) (holding that trial court's admission of evidence of party's subjective understanding of

11   contract constituted reversible error).  A party's uncommunicated subjective understanding of a

12   contract is not relevant.  *Houghton*, 261 Cal. App. 2d at 537 ("It has long been a settled principle

13   of contract law that the intention of a party to a bilateral agreement which is undisclosed and

14   uncommunicated to the other party is, in the absence of mistake or fraud, immaterial under the

15   objective theory of contract.") (collecting cases); *see also Orton v. Embassy Realty Assocs.*, 91

16   Cal. App. 2d 434, 441 (1949) ("When words of a doubtful meaning are used in a writing, parol

17   testimony is admissible to show the common meaning of the words used, but it is not admissible

18   to show the private understandings of the parties as to the meaning of such words.").

19        What may be relevant, if a contract is held to be ambiguous, is evidence of the

20   communicated, mutual intent of the parties.  *See* Cal. Civ. Code §§ 1649; Cal. Civ. Proc. Code

21   § 1860; *Ribiero v. Dotson*, 187 Cal. App. 3d 819 (1960) ("[W]hen the language of a contract is

22   fairly susceptible to one of two constructions (i.e., when it is ambiguous) extrinsic evidence may

23   be considered not to vary or modify the terms of the agreement but to aid the court in ascertaining

24   the true intent of the parties."); *see also Alex Robertson Co. v. Imperial Cas. & Idem. Co.*, 8 Cal.

25   App. 4th 338, 346 (1992) (holding that, because a contract "must be interpreted to give effect to

26   the *mutual* intention of the parties," evidence of a party's subjective intent is irrelevant in the

27   absence of any evidence that "this intent was ever communicated" to the other party) (emphasis in

28   original).  Neither Mr. Jobs's undisclosed subjective understanding of the Download Agreements

- 8 -

1   nor the views expressed in *Thoughts on Music* constitute the type of parol evidence that may be

2   admissible to interpret the mutual intention of the parties to the contract.  Because the evidence

3   Plaintiffs seek from Mr. Jobs is immaterial to the Action, the Order is in clear error and must be

4   set aside.

5               **2.      The Order Is Contrary to Law Because It Permits the Deposition of a
                          Non-Party Apex Witness Without a Showing of Exhaustion of Other
6                         Sources.**

7           The Order's holding that, "[a]bsent at least *some* actual showing of undue burden, there is

8   no legal authority for requiring Defendants [sic] to use purportedly less burdensome means of

9   obtaining the discovery before allowing 'apex' depositions," is contrary to the law.  The Federal

10  Rules of Civil Procedure require the court to limit discovery "if it determines that the discovery

11  sought is . . . obtainable from some other sources that is more convenient, less burdensome, or

12  less expensive."  *See* Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(c)(3) (setting forth

13  court's power to quash or modify unduly burdensome subpoenas); *Nidec Corp. v. Victor Co.*, __

14  F. Supp. 2d __, 2007 WL 1994171, at *1 (N.D. Cal. July 5, 2007) (holding that motion to quash

15  should be granted when non-party discovery sought is "obtainable from a source more direct,

16  convenient, and less burdensome").

17          The Order's formulation of the law ignores the inherent burden imposed by non-party

18  discovery, particularly when the non-party is a busy CEO at the apex of corporate management.

19  *See Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) ("Underlying the protections

20  of Rule 45 is the recognition that 'the word non-party serves a constant reminder of the reasons

21  for the limitations that characterize third party discovery.'") (quoting *Dart Indus.*, 649 F.2d at

22  649).  Courts have uniformly recognized the major burden imposed by third-party discovery and

23  held that a subpoenaed individual's non-party status is significant in determining whether the

24  discovery sought is appropriate.  *See Dart Indus.*, 649 F.2d at 649 (holding that trial court must

25  impose restrictions on non-party discovery to "protect third parties from harassment,

26  inconvenience, or disclosure of confidential documents"); *Jack Frost Lab. Inc. v. Physicians &*

27  *Nurses Mfg. Corp.*, No. 92 Civ 9264 (MGC), 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994)

28  ("[T]he most obvious burden is borne by the non-party witness, and we are instructed to be

OBJECTION TO ORDER DENYING MOTION TO
QUASH DEPOSITION
CASE NO. 08-80040 Misc. RMW (PVT)

1    particularly sensitive to any prejudice to non-litigants drawn against their will into the legal

2    disputes of others.").  The Order's failure to consider the burden imposed by a deposition on an

3    apex witness of a non-party constitutes clear error.

4            The Order is also inconsistent with the long line of cases holding that, when the deposition

5    of an apex witness is sought, the court must consider the relatively high likelihood of harassment

6    and burden, which will often outweigh the potential benefits of the discovery.  *See, e.g.*, *Salter v.*

7    *Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Celerity, Inc.*, 2007 WL 205067 at *2-3; *Baine v.*

8    *Gen. Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991); *Mulvey*, 106 F.R.D. at 366 (corporate

9    officers are "easily subjected to unwarranted harassment and abuse").  The purpose of the apex

10   doctrine – to prevent unnecessary harassment of prominent corporate individuals – is undermined

11   by the Order's failure to require Plaintiffs to exhaust less burdensome means of obtaining

12   discovery.[3]  *See Celerity, Inc.*, 2007 WL 205067 at *2-3; *Mulvey*, 106 F.R.D. at 366.  Such a

13   result would permit parties to use the discovery process to harass companies and their highest

14   level corporate managers, even when less burdensome sources of discovery are readily available.

15   The law does not support such a result.

16        **B.        Because Plaintiffs Failed to Raise Mr. Jobs's Participation in Executing the**
             **Download Agreements During the Meet and Confer Discussions, This Court**
17           **Should Consider the Additional Factual Declarations.**

18           The Court should consider the declarations of Eddy Cue and Kevin Saul submitted in

19   support of Mr. Jobs's Objections to the Order.  The declarations are offered to refute new

20   arguments presented by Plaintiffs at the hearing on the Motion for Protective Order.  During the

21   meet and confer discussions preceding the Motion, Plaintiffs insisted that Mr. Jobs's essay,

22   *Thoughts on Music*, was sole basis for proceeding with a deposition of Mr. Jobs.  (Vandell

23   Decl. ¶ 13.)  Plaintiffs never sought Mr. Jobs's deposition on the basis of his execution of one of

24   
---

[3]      Even if the Court could justify its refusal to apply the apex doctrine to Mr. Jobs's Motion, its
25   refusal to require Plaintiffs to exhaust alternative sources of discovery would still be in error
     because it ignores the strong evidence of harassment manifested by the deposition subpoena.  As
26   Mr. Jobs argued in his Motion and Reply brief, Plaintiffs' conduct in serving the deposition
     subpoena during the course of contentious negotiations over Plaintiffs' document demands
27   strongly suggests that their primary motivation in seeking Mr. Jobs's deposition is to harass
     Apple.  (Reply Brief (Docket #10) at 6.)  It is clear error to let Mr. Jobs's deposition proceed in
28   the face of such clear potential for harassment.

1    the Download Agreements, or his role in the negotiation and drafting of those agreements. (*Id.*

2    ¶ 16.) Accordingly, the moving papers focused on showing that the *Thoughts on Music* essay

3    alone was irrelevant to the parties' contract dispute and did not afford proper grounds for an apex

4    deposition.

5        At the hearing, Plaintiffs insisted that Mr. Jobs's execution of a Download Agreement was

6    a sufficient basis to justify his deposition. The Order, moreover, relies on both his execution of

7    the agreement and the essay. Because the issue of Mr. Jobs's actual involvement with the

8    negotiation, drafting and execution of the Download Agreements – as opposed to his views in the

9    *Thoughts on Music* – was not properly raised before the motion was filed, the Court should

10   exercise its discretion to consider the additional facts submitted in the declarations of Eddy Cue

11   and Kevin Saul. *See United States v. Howell*, 231 F.3d 615, 621-22 (2000) (holding that district

12   court "has discretion" to "consider evidence presented for the first time" in party's objection to

13   magistrate judge's order); *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) ("[I]n making a

14   decision on whether to consider newly offered evidence, the district court must actually exercise

15   its discretion, rather than summarily accepting or denying the motion."); *see also Conetta v. Nat'l

16   Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (2001) (district court should also be permitted to consider

17   new evidence when it reviews magistrate orders pursuant to 28 U.S.C. § 636(b)(1)(A)).

18   **IV.    <u>CONCLUSION</u>**

19       For the foregoing reasons, Non-Party Steve Jobs's Objection should be sustained.

20   Accordingly, the Court should set aside the Order and grant Non-Party's Motion for Protective

21   Order to Quash "Apex" Deposition Subpoena.

22

23   DATED:  May 15, 2008                    GEORGE A. RILEY
                                             O'MELVENY & MYERS LLP

24

25                                           By: *George Riley* /s/
                                                 George A. Riley
26                                           Attorneys for Non-Party Deponent Steve Jobs

27

28   SF1:715873.1

1  | LATHAM & WATKINS LLP
   | DANIEL SCOTT SCHECTER (S.B. #171472) - daniel.schecter@lw.com
2  | COLIN B. VANDELL (S.B. #240653) - colin.vandell@lw.com
   | 633 West Fifth Street, Suite 4000
3  | Los Angeles, California 90071-2007
   | Telephone:  (213) 485-1234
4  | Facsimile:   (213) 891-8763

5  | O'MELVENY & MYERS LLP
   | GEORGE A. RILEY (S.B. #118304) - griley@omm.com
6  | Embarcadero Center West
   | 275 Battery Street, Suite 2600
7  | San Francisco, California 94111-3305
   | Telephone:  (415) 984-8741
8  | Facsimile:   (415) 984-8701

9  | Attorneys for Non-Party Deponent
   | Steve Jobs

10 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN:<br><br>F.B.T. PRODUCTIONS, LLC AND EM2M, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AFTERMATH RECORDS, INTERSCOPE RECORDS, UMG RECORDING, INC., and ARY, INC.,<br><br>Defendants. | Case No. 08-80040 Misc. RMW (PVT)<br><br>[Related to Case No. CV 07-3314 PSG (MANx) (C.D. Cal.)]<br><br>**[PROPOSED] ORDER SUSTAINING NON-PARTY STEVE JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE ORDER TO QUASH "APEX" DEPOSITION SUBPOENA** |

1    On May 15, 2008, Non-Party Deponent Steve Jobs timely filed an objection to Magistrate

2  Judge Patricia V. Trumbull's Order Denying Non-Party Steve Jobs's Motion to Quash Subpoena

3  (the "Order").  Upon consideration of the papers filed and oral argument presented, and for good

4  cause appearing:

5    **IT IS HEREBY ORDERED** that Steve Jobs's Objection to Magistrate Judge Patricia V.

6  Trumbull's Order Denying Non-Party Steve Jobs's Motion to Quash Subpoena is SUSTAINED.

7    The Order is hereby set aside, and Non-Party Steve Jobs's Motion for Protective Order to

8  Quash "Apex" Deposition Subpoena is GRANTED.

9

10  DATED: _____        _____

11                                HONORABLE RONALD M. WHYTE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  LATHAM & WATKINS
   DANIEL SCOTT SCHECTER (S.B. #171472) – daniel.schecter@lw.com
2  COLIN B. VANDELL (S.B. #240653)
   633 West Fifth Street, Suite 4000
3  Los Angeles, California 90071-2007
   Telephone:  (213) 485-1234
4  Facsimile:   (213) 891-8763

5  GEORGE A. RILEY (S.B. #118304) – griley@omm.com
   O'MELVENY & MYERS LLP
6  Embarcadero Center West
   275 Battery Street
7  San Francisco, California 94111-3305
   Telephone:  (415) 984-8741
8  Facsimile:   (415) 984-8701

9  Attorneys for Non-Party Deponent
   Steve Jobs
10

                    **UNITED STATES DISTRICT COURT**
11
                  **NORTHERN DISTRICT OF CALIFORNIA**
12
                        **SAN JOSE DIVISION**
13

14  IN THE MATTER OF A DEPOSITION          Case No. 08-80040 Misc. RMW (PVT)
    SUBPOENA SERVED IN:
15                                          [Related to Case No. CV 07-3314 PSG
    F.B.T. PRODUCTIONS, LLC AND EM2M,       (MANx) (C.D. Cal.)]
16  LLC,
                                            **DECLARATION OF EDDY CUE IN**
17              Plaintiffs,                  **SUPPORT OF NON-PARTY'S**
                                            **OBJECTION TO ORDER DENYING**
18          v.                              **NON-PARTY'S MOTION FOR**
                                            **PROTECTIVE ORDER TO QUASH**
19  AFTERMATH RECORDS, INTERSCOPE           **"APEX' DEPOSITION SUBPOENA**
    RECORDS, UMG RECORDING, INC., and
20  ARY, INC.,

21              Defendants.

22

23

24

25

26

27

28

1

## DECLARATION OF EDDY CUE

2      (1)     I am Vice President of iTunes at Apple Computer, Inc. ("Apple"). I have been

3   employed by Apple since 1989. I am responsible for all aspects in relation to operating iTunes

4   Music Store. I have personal knowledge of the matters set forth herein, and would competently

5   testify thereto under oath if called as a witness. I submit this declaration in support of the

6   Objection to the Magistrate Judge's Order denying deponent's motion for a protective order to

7   prevent the deposition of Steve Jobs, Apple's founder, Chairman and chief executive officer.

8      (2)     Apple is not a party to the underlying proceeding, *F.B.T. Productions, LLC v.*

9   *Aftermath Records*, Case No. CV07-3314 PSG (MANx) (C.D. Cal.) (the "FBT Action").

10     (3)     Mr. Jobs and Apple are not parties to any agreements (the "UMG Agreements")

11  between Plaintiffs and Defendants Aftermath Records, Interscope Records, UMG Recordings,

12  Inc. and Ary, Inc. (the "UMG Defendants") regarding master recordings of performances by

13  Marshall Mathers (the "Eminem Masters").

14     (4)     Neither Jobs nor Apple had any role in negotiating, drafting, or executing the

15  UMG Agreements between Plaintiffs and Defendants.

16     (5)     Apple has no agreements with Plaintiffs regarding the Eminem Masters for the

17  delivery of music purchased on iTunes. Content owned or controlled by UMG Defendants is sold

18  through iTunes pursuant to a series of confidential master online distribution agreements with

19  Apple entitled "Digital Music Download Sales Agreements" ("Download Agreements"). The

20  Download Agreements relate generally to the large catalog of records owned or controlled by

21  UMG and do not specify Eminem or any other particular individual artists or specific content.

22     (6)     The first Download Agreement was entered into on December 13, 2002. I was a

23  member of the team of negotiators that was assembled to work through the technical and legal

24  details. The team consisted of Bud Tribble, James Higa, Jeff Robin, Kevin Saul, and myself.

25  Steve Jobs was not part of the negotiating team.

26     (7)     Mr. Jobs was not involved with negotiations relating to the legal terms governing

27  the transfer of rights associated with the UMG Defendants' sound recordings.

28

1

(8)    Since the inception of the iTunes Music Store in 2002, I have been and continue to be the senior business negotiator of agreements between Apple and all of the major record labels relating to the sale of music on the iTunes Music Store.

(9)    On behalf of Apple, I signed the Amended and Restated Download Agreement, dated April 26, 2006, which is the current and effective iteration of the Download Agreement. I also signed the First through Fourth Amendments to the Amended and Restated Download Agreement.

(10)    On June 18, 2007, my deposition was taken by the plaintiffs in *Bridgeport Music Group, Inc., and Southfield Music, Inc., v. UMG Recordings, Inc., Napster, LLC, Apple Computer, Inc., and Yahoo!, Inc.*, Case No. 05 Civ. 6430 (VM) (KNF) (S.D.N.Y) (the "Bridgeport Action"). The attorneys for plaintiffs were King & Barrow. My deposition was taken by Richard S. Busch.

(11)    During the Bridgeport Action deposition I was questioned at some length about the essay written by Steve Jobs, entitled *Thoughts on Music*. As I explained at my deposition, I reviewed the essay before it was published and provided comments to Mr. Jobs. Some of my comments were incorporated into the published essay. I answered all of the questions that were asked of me about *Thoughts on Music* during my Bridgeport Action deposition fully and completely.

(12)    During the Bridgeport Action deposition I was also questioned about the structure of the agreement between UMG and Apple. I answered those questions fully and completely.

(13)    The Bridgeport Action, in which Apple is a defendant, is still ongoing.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _15_ day of May, 2008 in Cupertino, California.

_Eddy Cue_

CUE DECL. IN SUPPORT OF OBJECTION TO
MAGISTRATE JUDGE'S ORDER
CASE NO. 08-80040 Misc. RMW (PVT)

LATHAM & WATKINS
DANIEL SCOTT SCHECTER (S.B. #171472) – daniel.schecter@lw.com
2  COLIN B. VANDELL (S.B. #240653)
633 West Fifth Street, Suite 4000
3  Los Angeles, California 90071-2007
Telephone: (213) 485-1234
Facsimile:  (213) 891-8763

5  GEORGE A. RILEY (S.B. #118304) – griley@omm.com
O'MELVENY & MYERS LLP
6  Embarcadero Center West
275 Battery Street
7  San Francisco, California 94111-3305
Telephone: (415) 984-8741
8  Facsimile:  (415) 984-8701

9  Attorneys for Non-Party Deponent
Steve Jobs

10

11

12

13

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| 14  IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN: <br><br> 15 <br> F.B.T. PRODUCTIONS, LLC AND EM2M, <br> 16  LLC, <br><br> 17  Plaintiffs, <br><br> 18  v. <br><br> 19  AFTERMATH RECORDS, INTERSCOPE <br> RECORDS, UMG RECORDING, INC., and <br> 20  ARY, INC., <br><br> 21  Defendants. | Case No. 08-80040 Misc. RMW (PVT) <br><br> [Related to Case No. CV 07-3314 PSG (MANx) (C.D. Cal.)] <br><br> **DECLARATION OF KEVIN SAUL IN SUPPORT OF NON-PARTY'S OBJECTION TO ORDER DENYING NON-PARTY'S MOTION FOR PROTECTIVE ORDER TO QUASH "APEX" DEPOSITION SUBPOENA** |

22

23

24

25

26

27

28

**DECLARATION OF KEVIN SAUL**

(1)    I am Senior Director in the Legal Department of Apple Inc. ("Apple').  Among other duties, I have the responsibility for providing legal support to the iTunes business.  I am licensed to practice law in the State of California.  I have personal knowledge of the matters set forth herein, and would competently testify thereto under oath if called as a witness.  I submit this declaration in support of the Objection to the Magistrate Judge's Order denying deponent's motion for a protective order to prevent the deposition of Steve Jobs, Apple's founder, Chairman and chief executive officer.

(2)    Apple is not a party to the underlying proceeding, F.B.*T. Productions, LLC v. Aftermath Records,* Case No. CV07-3314 PSG (MANx) (C.D. Cal.) (the "FBT Action").

(3)    Mr. Jobs and Apple are not parties to any agreements (the "UMG Agreements") between Plaintiffs and Defendants Aftermath Records, Interscope Records, UMG Recordings, Inc. and Ary, Inc. (the "UMG Defendants") regarding master recordings of performances by Marshall Mathers (the "Eminem Masters").

(4)    Neither Jobs nor Apple had any role in negotiating, drafting, or executing the UMG Agreements between Plaintiffs and Defendants.

(5)    Apple has no agreements with Plaintiffs regarding the Eminem Masters for the delivery of music purchased on iTunes.  Content owned or controlled by UMG Defendants is sold through iTunes pursuant to a series of confidential master online distribution agreements with Apple entitled "Digital Music Download Sales Agreements" ("Download Agreements").  The Download Agreements relate generally to the large catalog of records owned or controlled by UMG and do not specify Eminem or any other particular individual artists or specific content.

(6)    The first Download Agreement was entered into on December 13, 2002.  Negotiations for this agreement began in the latter half of 2002.  A team of negotiators was assembled to work through the technical and legal details.  The team consisted of Eddy Cue, Bud Tribble, James Higa, Jeff Robbin and me.  Steve Jobs was not part of the negotiating team and did not attend the team's negotiating sessions.

(7)    Apple's negotiating team represented a variety of disciplines.  Eddy Cue was vice

SAUL DECL. IN SUPPORT OF OBJECTION
CASE NO. 08-80040 Misc. RMW (PVT)

president of Applications and Internet Services.  Bud Tribble was vice president of Software

Technology.  James Higa was Senior Director, Office of the CEO.  Jeff Robbin was Vice

President of Engineering for the Applications Group.   I was legal counsel to Apple.  Apple did

not have the assistance of outside counsel in negotiating this agreement.

(8)    The negotiations over the Download Agreement were complex and protracted.

My primary contact at UMG was David Weinberg, who was vice president, Business and Legal

Affairs for Universal's digital arm, eLabs.  The negotiations covered all the details that appeared

in the final Download Agreement, including the legal terms governing the scope of authority

granted to Apple for the distribution of content owned by UMG..  The structure of the agreement,

its legal requirements, the definition of terms appearing in the agreement, and all other legal and

technical requirements were the responsibility of the negotiating team.  Mr. Jobs, to the extent he

had any involvement in negotiating this agreement, was engaged solely providing direction in

determining business points such as price.  Apple's negotiating team, and not Mr. Jobs, resolved

the form and legal content of the final agreement through extensive discussions with UMG.  Mr.

Weinberg and I were responsible for drafting the final terms of the Download Agreement.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this ___ day of May, 2008 in Cupertino, California.

_____

SFI:715596.2

SAUL DECL. IN SUPPORT OF OBJECTION
CASE NO. 08-80040 Misc. RMW (PVT)

Apple did not have the assistance of outside counsel in negotiating this agreement.

(8)     The negotiations over the Download Agreement were complex and protracted. My primary contact at UMG was David Weinberg, who was vice president, Business and Legal Affairs for Universal's digital arm. eLabs. The negotiations covered all the details that appeared in the final Download Agreement, including the legal terms governing the scope of authority granted to Apple for the distribution of content owned by UMG.. The structure of the agreement, its legal requirements. the definition of terms appearing in the agreement, and all other legal and technical requirements were the responsibility of the negotiating team. Mr. Jobs, to the extent he had any involvement in negotiating this agreement, was engaged solely providing direction in determining business points such as price. Apple's negotiating team, and not Mr. Jobs, resolved the form and legal content of the final agreement through extensive discussions with UMG. Mr. Weinberg and I were responsible for drafting the final terms of the Download Agreement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

        Executed this d    a    y of May, 2008 in Cupertino, California.

SF1:715596.2

1  LATHAM & WATKINS LLP
   Daniel Scott Schecter (SBN 171472) - daniel.schecter@lw.com
2  Colin B. Vandell (SBN 240653) - colin.vandell@lw.com
   633 West Fifth Street, Suite 4000
3  Los Angeles, CA  90071-2007
   Telephone:  (213) 485-1234
4  Facsimile:  (213) 891-8763

5  Attorneys for Non-Party Deponent Steve Jobs

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                          SAN JOSE DIVISION

10

11 | IN THE MATTER OF A DEPOSITION | Case No. 08-80040 Misc. RMW (PVT)
12 | SUBPOENA SERVED IN:

   | [Related to Case No. CV07-3314 PSG (MANx)
13 | F.B.T. PRODUCTIONS, LLC AND EM2M, | (C.D. Cal.)]
   | LLC,
14
                    Plaintiffs,      | **DECLARATION OF COLIN B. VANDELL**
15                                   | **IN SUPPORT OF NON-PARTY STEVE**
          v.                         | **JOBS'S OBJECTION TO ORDER DENYING**
16                                   | **MR. JOBS'S MOTION FOR PROTECTIVE**
   AFTERMATH RECORDS, INTERSCOPE     | **ORDER TO QUASH "APEX" DEPOSITION**
17 RECORDS, UMG RECORDING, INC.,     | **SUBPOENA**
   AND ARY, INC.,
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

DECLARATION OF COLIN B. VANDELL IN
SUPPORT OF OBJECTION TO MAGISTRATE
JUDGE'S ORDER DENYING MOTION TO QUASH

## DECLARATION OF COLIN B. VANDELL

(1)    I am an attorney at the law firm of Latham & Watkins LLP, counsel to non-party Apple, Inc. ("Apple") in the above-captioned matter, and am licensed to practice law in the State of California. I have personal knowledge of the matters set forth herein, and would competently testify thereto under oath if called as a witness. I submit this Declaration in support of the filing of non-party Steve Jobs's Objection to the Order denying Mr. Jobs's Motion for Protective Order to Quash the Apex deposition subpoena that Plaintiffs F.B.T. Production, LLC and Em2M, LLC ("Plaintiffs") served on Mr. Jobs.

(2)    The underlying proceeding, *F.B.T. Productions, LLC v. Aftermath Records*, Case No. CV07-3314 PSG (MANx) (C.D. Cal.) (the "Action"), was commenced by Plaintiffs on May 21, 2007, against Defendants Aftermath Records, Interscope Records, UMG Recordings, Inc., and Ary, Inc. (the "UMG Defendants"), asserting claims for breach of contract and declaratory judgment.

(3)    Plaintiffs filed a First Amended Complaint (the "Complaint") on June 13, 2007, again asserting breach of contact and declaratory judgment claims. (Attached hereto as Exhibit A ("Ex. A") is a true and correct copy of the Complaint.)

(4)    The Action alleges that Defendants have breached certain agreements ("UMG Agreements") relating to the payment of royalties for recordings of performances by the artist known as Eminem ("Eminem Masters"). (Ex. A (Complaint).)

(5)    According to the Complaint, Defendants must pay royalties at a rate of 50% "on masters licensed by us or our licensees to others for their manufacture and sale of records or for any other use." (Ex. A (Complaint at ¶ 29).) Plaintiffs contend that this provision governs the payment of royalties for the sale of digital downloads, but that Defendants have erroneously calculated the royalties under the "distribution" provisions of the UMG Agreements at a 12% royalty rate. (Ex. A (Complaint at ¶ 35).)

(6)    On January 11, 2008, Plaintiffs issued a subpoena for documents from Apple (the "Apple Document Subpoena") with numerous broad, irrelevant, and vague requests.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2    DECLARATION OF COLIN B. VANDELL IN
SUPPORT OF OBJECTION TO MAGISTRATE
JUDGE'S ORDER DENYING MOTION TO QUASH

1   (Attached hereto as Exhibit B ("Ex. B") is a true and correct copy of the Apple Document

2   Subpoena.)

3           (7)     The Apple Document Subpoena was served on Apple in violation of

4   Federal Rule of Civil Procedure 45.  No prior notice was provided to Defendants.  (Attached

5   hereto as Exhibit C ("Ex. C") is a true and correct copy of a letter from UMG Defendants'

6   counsel to Plaintiffs' counsel, dated Jan. 22, 2008, that details the violation.)

7           (8)     The Apple Document Subpoena demanded, *inter alia*, any and all

8   agreements – and all communications and other documents relating in any way to such

9   agreements – between Apple and UMG regarding music distribution.  (Ex. B (Apple Document

10  Subpoena).)

11          (9)     Apple conferred numerous times with Plaintiffs in a good faith attempt to

12  resolve the overbreadth of the Apple Document Subpoena.

13          (10)    In connection with the meet and confer process regarding the Apple

14  Document Subpoena, Apple offered to provide a number of documents.  These documents

15  included the agreements between Apple and any of the UMG Defendants (and any amendments)

16  which pertain to distribution of the Eminem Masters (the "Digital Music Download Sales

17  Agreements," or "Download Agreements").  Plaintiffs refused the offer and instead filed a

18  motion to compel further responses to the Apple Document Subpoena in the Central District of

19  California, in front of Magistrate Judge Nagle.

20          (11)    During and after the hearing on April 29, 2008, regarding the Apple

21  Document Subpoena, Judge Nagle denied six of Plaintiffs' nine document requests in the

22  subpoena, and ordered the production of: (i) "Apple/UMG Agreements" regarding the digital

23  distribution of music; (ii) non-privileged documents from the computers of Kevin Saul and Eddy

24  Cue regarding the drafting and negotiation of the Apple/UMG Agreements; (iii) documents using

25  the term "release" as were recently produced in a related case entitled *Bridgeport Music, Inc. v.*

26  *UMG Recordings, Inc.*, USDC Case No. 1:05-CV-06430 VM (JCF) (S.D.N.Y.); and (iv) music

27  download reports for Eminem content.  Apple is currently in the process of complying with

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DECLARATION OF COLIN B. VANDELL IN
SUPPORT OF OBJECTION TO MAGISTRATE
JUDGE'S ORDER DENYING MOTION TO QUASH

1  Judge Nagle's order.  (Attached hereto as Exhibits D and E ("Ex. D" and "Ex. E") are true and

2  correct copies of the Orders issued by Judge Nagle regarding the Apple Document Subpoena.)

3      (12)    Plaintiffs served a deposition subpoena on Steve Jobs (the "Jobs

4  Deposition Subpoena") during the Apple Document Subpoena meet and confer process.

5  (Attached hereto as Exhibit F ("Ex. F") is a true and correct copy of the Jobs Deposition

6  Subpoena.)

7      (13)    During the meet and confer discussions required under Civil L.R. 37-1

8  that preceded the hearing on Mr. Jobs's Motion for Protective Order, Plaintiffs' sole explanation

9  for the relevance of Mr. Jobs's deposition was the fact that he authored the essay *Thoughts on*

10  *Music*.  (Attached hereto as Exhibit G ("Ex. G') is a true and correct copy of a letter from

11  Plaintiffs' counsel to Mr. Jobs's counsel, dated March 13, 2008, in which Plaintiffs' counsel

12  unequivocally states that the deposition would be "based" on the *Thoughts on Music* essay.)

13  Plaintiffs claimed that the deposition of Mr. Jobs would seek to explore Mr. Jobs's interpretation

14  of the term "license," which he uses in the *Thoughts on Music* essay.  (Attached hereto as Exhibit

15  H ("Ex. H") is a true and correct copy of the essay *Thoughts on Music*.)

16      (14)    *Thought on Music* is a discussion of Mr. Jobs's views on why Apple uses

17  a Digital Rights Management system to protect content offered through Apple's iTunes Store.

18  (Ex. E.)  In the article, Mr. Jobs observed that, because Apple does not own the content, "it must

19  license the rights to distribute music from others."  (Ex. H (*Thoughts on Music* at 1).)

20      (15)    *Thoughts on Music* does not define the term "license," or use it in any

21  technical or legal sense.  Nowhere in the article does Mr. Jobs offer any opinion on the nature of

22  the contractual relationships among artists, the music labels, and on-line music distributors.  Mr.

23  Jobs simply uses common terminology to underscore the fact that Apple does not own the music

24  available through its iTunes store.  (*See* Ex. H (*Thoughts on Music*).)

25      (16)    During the hearing, Plaintiffs asserted that the deposition of Mr. Jobs was

26  warranted because Mr. Jobs executed the original Download Agreements.  Plaintiffs contend that

27  this fact alone demonstrates that Mr. Jobs possesses a subjective understanding of the scope of

28  the Download Agreements.  Plaintiffs, however, did not make this argument during the meet and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4    DECLARATION OF COLIN B. VANDELL IN
SUPPORT OF OBJECTION TO MAGISTRATE
JUDGE'S ORDER DENYING MOTION TO QUASH

1    confer discussions that preceded the hearing.  Accordingly, Mr. Jobs did not have an opportunity

2    to properly respond, or proffer evidence, to refute the untimely assertion.

3              (17)    On May 1, 2008, the Magistrate Judge issued the Order denying the

4    motion to quash.  (Attached hereto as Exhibit I ("Ex. I") is a true and correct copy of the Order.)

5              I declare under penalty of perjury under the laws of the State of California that the

6    foregoing is true and correct.

7              Executed this 15 day of May, 2008 in Los Angeles, California.

8

9                                                      _____

10                                                           Colin B. Vandell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5    DECLARATION OF COLIN B. VANDELL IN
     SUPPORT OF OBJECTION TO MAGISTRATE
     JUDGE'S ORDER DENYING MOTION TO QUASH

**EXHIBIT C**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

**EXHIBIT A**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

2008-FEB-14  14:17                          +2132539413        T-616   P.002/018   F-182



1  Richard S. Busch (TN Bar No. 014594)
2  *Pro Hac Vice Pending*
   KING & BALLOW
3  315 Union Street, Suite 1100
4  Nashville, TN 37201
5  (615) 259-3456   Facsimile: (615) 726-5417

6  Paul H. Duvall (State Bar No. 73699)
   KING & BALLOW
7  9404 Genesee Avenue, Suite 340
8  La Jolla, CA 92037-1355
9  (858) 597-6000   Facsimile: (838) 597-6008

10 Mark L. Block (State Bar No. 115457)
11 Christensen, Glaser, Fink, Jacobs, Weil, & Shapiro, LLP
   10250 Constellation Blvd., 19th Floor
12 Los Angeles, CA 90067
13 (310) 553-3000  Facsimile: (310) 556-2920

14 Attorneys for Plaintiffs F.B.T. Productions, LLC and Em2M, LLC

15             UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA

17 F.B.T. PRODUCTIONS, LLC,           )
18 and Em2M, LLC,                     )   Case No. CV 07-03314 PSG (MANx)
19                                     )
        Plaintiffs,                    )
20                                     )   FIRST AMENDED COMPLAINT
    v.                                 )   FOR BREACH OF CONTRACT;
21                                     )   DECLARATORY JUDGMENT
   AFTERMATH RECORDS doing            )
22 business as AFTERMATH              )
   ENTERTAINMENT;                      )   JURY DEMAND
23 INTERSCOPE RECORDS;               )
   UMG RECORDINGS, INC.; and          )
24 ARY, INC.,                         )
25                                     )
26      Defendants.                    )
27                                     )

Issued summons

DOCKETED ON CM
JUN 1 4 2007
BY _____ 009

1

Plaintiffs F.B.T. Productions, LLC, and Em2M, LLC (collectively "Plaintiffs"), by and through their attorneys, for their Complaint against the Defendants named above allege as follows:

## I. NATURE OF THE ACTION

1.     This action for breach of contract and declaratory judgment against Defendants named herein arises from Defendants' failure to properly account to and pay Plaintiffs royalties with respect to master recordings of the musical performances by Marshall B. Mathers III professionally known as Eminem ("Eminem") licensed from Defendants by various "Music Download Providers" for reproduction and sale as more fully described hereinbelow (including but not limited to iTunes, Buy.com, Napster, among others) and by "Mastertone Providers" (including but not limited to Cingular Wireless, Sprint, T-Mobile, and certain affiliates of Defendants, among others).

2.     This action seeks remedies for Defendants' knowing violations of the terms of their agreements with Plaintiffs whereby Defendants have paid Plaintiffs significantly less royalties than are owed to Plaintiffs for the licensing of the master recordings to Music Download Providers and Mastertone Providers.

3.     Plaintiffs seek damages for breach of contract. Plaintiffs further seek a declaration, pursuant to 28 U.S.C. §2201, that Defendants are obligated to pay Plaintiffs an amount equal to fifty percent (50%) of Defendants' net receipts from

2

the sale of records or other uses of the master sound recordings which are licensed by Defendants or Defendants' licensees to others for their manufacture and sale of records or for any other uses.

4.     Defendants' recording agreements with Plaintiffs require Defendants to pay Plaintiffs fifty percent (50%) of all net receipts received by Defendants on masters licensed by Defendants or Defendants' licensees to others for their manufacture and sale of records or for any other use.

5.     Rather than paying Plaintiffs fifty percent (50%) of the net receipts paid to Defendants for the licensed digital uses of master recordings featuring Eminem's performances, Defendants wrongfully (a) calculate royalties by applying an album royalty rate to an artificially imputed retail price of the download without a packaging or configuration deduction; (b) incorrectly compute domestic digital download sales using a fabricated retail price of 130% of wholesale price rather than the retail price actually charged to consumers by the licensees; and (c) apply territory reductions to so-called foreign digital download sales without an economic or contractual basis for such reductions.

6.     As a result of Defendants' intentional past and continuing contractual breaches, Plaintiffs have been damaged by the loss of royalty payments in excess of the jurisdictional limits of this Court which royalty payments Defendants have retained for their own benefit.

3

2008-FEB-14  14:17                    +2182530413        T-816  P.005/018  F-192

7.     Plaintiffs seek compensatory damages, attorneys' fees and other costs, and a judgment declaring Plaintiffs' rights pursuant to the recording agreements with Defendants and the proper method of calculating royalty payments or crediting royalty accounts with respect to licensed digital uses of the applicable master recordings by third party Music Download Providers, Mastertone Providers and others, and requiring that Defendants adhere to the proper method of calculating such royalties in the future.

## PARTIES

8.     Plaintiff F.B.T. Productions LLC ("F.B.T.") is a Michigan limited liability company. The only members comprising F.B.T. are Mark Bass and Jeff Bass. Both members are natural persons and United States citizens. Both members are residents of Michigan and intend to reside in Michigan permanently, and therefore are domiciled in Michigan. F.B.T. is a citizen of Michigan.

9.     Plaintiff Em2M LLC ("Em2M") is a Michigan limited liability company. Joel Martin, a natural person, is the sole member of Em2M. Mr. Martin is a United States citizen and a resident of the State of Michigan. He intends to reside in Michigan permanently, and therefore is domiciled in Michigan. Em2M is a citizen of Michigan.

### Defendant Aftermath Records

10.     Defendant Aftermath Records and Aftermath Records doing business

4

1   as Aftermath Entertainment ("Aftermath") is a joint venture between three entities:

2   (1) Interscope Records, a California general partnership (the "Interscope

3

4   Partnership"), (2) Interscope Records, an unincorporated division of UMG

5   Recordings, Inc., a Delaware corporation authorized to do business in the State of

6

7   California ("UMG"), and (3) ARY, Inc., a California corporation ("ARY"). The

8   Interscope Records, a Partnership, is a general partnership comprised of three

9

10  entities: (a) Interscope Records, an unincorporated division of UMG, (b) UMG,

11  and (c) PRI Productions, Inc., a Delaware Corporation. Based on the citizenship of

12  the entities of the joint venture, Aftermath Entertainment is a citizen of California

13

14  and Delaware.

15          a.      UMG is organized under the laws of the State of Delaware and

16

17  is a citizen of that state, as is its unincorporated division, Interscope Records.

18  UMG Recordings and its divisions also are citizens of the state that is UMG's

19

20  principal place of business, which is California.  According to its website,

21  "UMG's corporate headquarters are located at 2220 Colorado Avenue, Santa

22  Monica, CA 90404 and 1755 Broadway, New York, NY 10019." According to its

23

24  registration on file with the California Secretary of State, UMG is registered in the

25  State of Delaware and its offices are located at "10 Universal City Plaza, Universal

26  City, California, 91608." Lastly, UMG's critical copyright and licensing

27

28  department and its Film & TV Licensing departments are stationed in California as

5

1   well. On information and belief, Plaintiffs allege that UMG employs a majority of

2   its employees in California, and the majority of its executive and administrative

3

4   functions are performed in California because (a) at least one of its two

5   headquarters are located in California, (b) UMG's critical licensing and copyright

6

7   divisions are located in California, and (c) a majority of its operations, both

8   executive and administrative, take place in California.

9           b.    PRI Productions, Inc., (hereinafter, "PRI") is a Delaware

10

11  Corporation registered to do business in California.  PRI's principal place of

12  business is California.  It lists its address with the California Secretary of State as

13

14  "10 Universal City Plaza, Universal City, CA, 91608." This address is the exact

15  same address as UMG registered with the California Secretary of State.  On

16

17  information and belief, Plaintiffs allege that PRI is involved in the entertainment

18  and music industries and performs the majority of its operations in California in

19  concert with UMG.  Additionally, Plaintiffs allege on investigation and discovery

20

21  that PRI has no executive and no administrative staff operating outside of

22  California.  All of its operations therefore take place in California.  It is a citizen of

23

24  California and Delaware.

25          11.   Interscope Records, a Partnership, is comprised of UMG and PRI, and

26  is a citizen of Delaware and California because UMG and PRI are both citizens of

27

28  Delaware and California.

6

12.    Interscope Records, an unincorporated division of UMG, is legally indistinguishable from UMG, and its citizenship is the same as UMG.  As explained above, UMG is a citizen of Delaware and California.

13.    ARY is a registered California Corporation.  Plaintiffs allege on information and belief that ARY is owned and operated solely by Andre Rommel Young, Jr., professionally known as the hip-hop artist "Dr. Dre."  The principal place of business of ARY is California.  Its registered mailing address is 10100 Santa Monica Blvd., Suite 1300, Los Angeles, California 90067.  ARY lists its agent for service of process as Howard King of the law firm King, Holmes, Paterno & Berliner, LLP, located at 1900 Avenue of the Stars, 25th Floor, Los Angeles, California 90067.  On information and belief, Plaintiffs allege that Mr. Young lives in California and runs ARY exclusively from California.  Also on information and belief, Plaintiffs allege that ARY has no employees other than Andre R. Young, Jr. and has no assets and no operations outside of California.  ARY's principal place of business is California, and ARY is a citizen of California.

14.    Defendant Aftermath is a citizen of California and Delaware.

15.    For purposes of diversity jurisdiction, Defendants Aftermath, the Interscope Partnership and UMG are all citizens of Delaware and California.  Defendant ARY, Inc., is a citizen of California.  Plaintiffs, as citizens of Michigan, are diverse from Defendants' citizenship.

7

## JURISDICTION AND VENUE

16.   · The jurisdiction of this Court is based upon 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  This action for declaratory judgment is brought pursuant to 28 U.S.C. §2201 which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. §1331. Venue is proper in this District pursuant to 28 U.S.C. §§1391 and 1400(a).

17.   Personal jurisdiction over each of the Defendants is proper in this Court, among other reasons, on the grounds that (a) Defendants and/or Defendants' agents transact business in the State of California; (b) Defendants' wrongful conduct alleged herein occurred in the State of California and this District; and (c) the Agreements that are the subject of this action were entered into in this District.

18.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(c).

## GENERAL ALLEGATIONS

19.   On November 28, 1995, F.B.T. entered into an Exclusive Artist's Recording Agreement with Eminem ("1995 Agreement").  The 1995 Recording Agreement between F.B.T. and Eminem subsequently was amended on November 5, 1998, February 22, 1999 and November 28, 1999.

20.   On March 9, 1998 F.B.T. and Aftermath entered into a written

8

1  agreement whereby F.B.T. agreed to furnish to Aftermath the exclusive recording

2  services of "Eminem." ("March 9, 1998 Agreement") On March 9, 1998, Eminem

3

4  also entered into a Letter of Inducement with Aftermath whereby Eminem

5  acknowledged and approved of the agreement between F.B.T. and Aftermath for

6

7  Eminem's exclusive recording services. ("Letter of Inducement")

8      21.    On September 27, 2000, F.B.T., Eminem and Aftermath entered into a

9

10  novation of the March 9, 1998 Agreement between F.B.T. and Eminem whereby

11  F.B.T. assigned all of its rights under the March 9, 1998 Agreement to Eminem,

12  Eminem assumed all of F.B.T's rights and obligation to Aftermath, and Aftermath

13

14  assumed F.B.T.'s obligations to Eminem so that Eminem would have a direct

15  relationship with Aftermath effective September 27, 2000 ("Novation"). Pursuant

16

17  to the Novation, F.B.T. irrevocably directed Aftermath to compute, account and

18  pay directly to Joel Martin, twenty-five percent (25%) of the monies payable to

19

20  F.B.T. under the Novation at the same times and on the same basis as Aftermath

21  accounts to F.B.T.   All parties expressly agreed Joel Martin is a third party

22  beneficiary under the Novation.

23

24      22.    Pursuant to the terms of the Novation, among other things, F.B.T.

25  remained an income participant with respect to all master recordings released by

26  Aftermath under the Novation and to which F.B.T. would have had rights prior to

27

28  the execution of the Novation (for purposes of this Complaint, the "Eminem

13

Masters"). Further, pursuant to the terms of the Novation, the 1995 Recording Agreement with its three subsequent modifications as well as the March 9, 1998 Agreement and Letter of Inducement were affirmed by the parties. One of the terms of the Novation provided that the royalties owed by Aftermath pursuant thereto were to be divided between F.B.T. and Eminem.

23.  On or about August 22, 2003 and effective as of July 2, 2003, a new agreement was entered into between Aftermath and Eminem regarding, among other things, the Eminem Masters ("2003 Agreement"). Pursuant to the terms of the 2003 Agreement, all "Prior Agreements" are affirmed expressly including (a) the 1995 Recording Agreement and amendments thereto; (b) the March 9, 1998 Agreement and Letter of Inducement; and (c) the September 27, 2000 Novation.

24.  On September 20, 2004, Joel Martin assigned all of his interests in and to the 2000 Novation and under the 2003 Agreement to Em2M LLC, and all payments and accountings otherwise due to Joel Martin thereafter were due to be made by Defendants to Em2M LLC.

25.  On November 1, 2004, F.B.T. and Eminem, on the one hand, and Aftermath, on the other hand, entered into a written modification of the Novation ("2004 Amendment").

26.  Pursuant to the terms of the foregoing agreements referenced hereinabove, F.B.T. and Eminem caused certain recorded performances of Eminem

10

2008-FEB-14  14:16                         +2132538413         T-616  P.012/018  F-132

to be delivered to Defendants, and Defendants agreed to manufacture, distribute, sell, and license for sale and distribution those master recordings in various configurations throughout the Universe.

27.    Plaintiffs have each performed their respective material obligations pursuant to the terms of each of the agreements referenced hereinabove.

28.    Pursuant to the terms of the March 9, 1998 Agreement and the 2003 Agreement, Defendants were to provide certain remuneration to Plaintiffs, including royalties, and to furnish Plaintiffs with semi-annual royalty accounting statements setting forth the computations of each Plaintiff's entitlement to royalties for the commercial exploitation of the Eminem Masters, which statements were to be accompanied by any royalty payments due.

29.    Pursuant to the terms of the March 9, 1998 Agreement and the 2003 Agreement, Defendants agreed to pay certain royalties as follows:  "On masters licensed by us or our Licensees to others for their manufacture and sale of records or for any other use, your royalty shall be an amount equal to fifty percent (50%) of our net receipts from the sale of those records or from those other uses of the masters."  The "other uses" of the Eminem Masters include, without limitation, Defendants, or Defendants' [L]icensees, licensing to various Music Download Providers and Mastertone Providers for digital uses, including digital downloads, digital streaming and mastertones.  The identities of each of the Music Download

11

Providers and Mastertone Providers are known exclusively to Defendants.

30.    Under the agreements entered into between Plaintiffs and Defendants, Defendants were obligated to act in good faith in their dealings with Plaintiffs and to render accurate royalty accounting statements, and to properly credit and account for the royalties generated by the commercial exploitation of the Eminem Masters.

31.    During the period January 1, 2002 to present, Defendants or Defendants' licensees have licensed the Eminem Masters to various Music Download Providers including but not limited to iTunes, Buy.com, Napster, among others, and Mastertone Providers (including but not limited to Cingular Wireless, Sprint, T-Mobile, and certain affiliates of Defendants, among others).

32.    Upon information and belief, Defendants' agreements with the Music Download Providers and Mastertone Providers involve the licensing of the Eminem Masters to such Music Download Providers and Mastertone Providers for sale in the form of digital music files which is encompassed in the definition of "other uses of the masters" as set forth in the March 9, 1998 Agreement and the 2003 Novation.

33.    In 2005, F.B.T. and Eminem retained an accounting firm to review the accounting records of Defendants and to perform a royalty audit on behalf of Plaintiffs for the periods January 1, 2002 through and including June 30, 2005. On

12

2008-FEB-14  14:18                          +2132580418        T-818  P.014/018  F-132

February 10, 2006, the accounting firm submitted its audit report to Defendants. As a result, the February 10, 2006 audit showed, among other things, that Plaintiffs, collectively, have been underpaid by Defendants for the digital uses in an amount in excess of $650,000.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

34.    Plaintiffs reallege each and every allegation in Paragraphs 1 through 33 hereof as if fully set forth herein.

35.    Defendants have failed to comply with the terms of the March 9, 1998 Agreement and the 2003 Agreement by failing to account and pay Plaintiffs fifty percent (50%) of Defendants' net receipts from the digital uses of the Eminem Masters by the Music Download Providers and Mastertone Providers. Defendants apply an incorrect formula for calculating royalties with respect to those royalties to be paid to Plaintiffs which results in Plaintiffs collectively receiving an average royalty of approximately twelve percent (12%) instead of the fifty percent (50%) required by the terms of the agreements.

36.    On February 21, 2007, and pursuant to paragraph 15(b) of the March 9, 1998 Agreement and the 2003 Agreement, Plaintiffs sent written notice to Defendants by certified mail, return receipt requested, advising Defendants of their breach of said agreements and requesting that Defendants cure the breach within thirty (30) days after the date of the notice.

13

37.    Despite said notice, Defendants have failed and refused to cure the breach and continue to incorrectly calculate royalties in violation of the March 9, 1998 Agreement and 2003 Agreement.  As a result of Defendants' improper calculation of royalties, Defendants have further breached said agreements by their failure (a) to account properly, (b) to credit and pay the correct amount of royalties due to Plaintiffs; and (c) to render royalty statements reflecting the correct amount of royalties due to Plaintiffs.

38.    By reason of the foregoing and other acts not presently known by Plaintiffs, Defendants have knowingly and materially breached its contractual obligations to Plaintiffs under the March 9, 1998 Agreement and the 2003 Agreement, and wantonly have disregarded the rights of Plaintiffs.

39.    Pursuant to the terms of the 2003 Agreement, should any party institute any action or proceeding at law or in equity to enforce any provision of the 2003 Agreement, including an action for declaratory relief, or for damages by reason of an alleged breach of any provision of the 2003 Agreement, or otherwise in connection with the 2003 Agreement or any of its provisions, the prevailing party is entitled to recover from the non-prevailing party reasonable and actual attorneys' fees and costs for services rendered to the prevailing party in such action or proceeding.

40.    As a result of the wrongful conduct of Defendants alleged

14

hereinabove, Plaintiffs have been damaged in an amount to be determined at the

time of trial, which upon information and belief is well in excess of one million

dollars ($1,000,000) for the digital uses.

## SECOND CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

41.    Plaintiffs reallege each and every allegation in Paragraphs 1 through

40 hereof as if fully set forth herein.

42.    Pursuant to 28 U.S.C. §2201, this Court may declare the rights and

other legal relations of any interested party seeking such declaration whether or not

further relief is, or could be, sought. Any such declaration shall have the force and

effect of a final judgment or decree and shall be reviewable as such.

43.    Plaintiffs contend, and seek a declaration, that, pursuant to the March

9, 1998 Agreement and the 2003 Agreement, Defendants are obligated to pay

Plaintiffs, collectively, fifty percent (50%) of Defendants' net receipts derived

from the licensing by Defendants or Defendants' Licensees to others "for their

manufacture and sale of records or for any other uses" of the Eminem Masters,

including, without limitation, Music Download Providers and Mastertone

Providers, the identities of which are known exclusively by Defendants.

Defendants deny they have such an obligation under said agreements.

44.    Plaintiffs have no adequate remedy at law.

45.    By reason of the foregoing, there is a present controversy between

15

Plaintiffs and Defendants for which a declaratory judgment should be entered

determining that the March 9, 1998 Agreement and the 2003 Agreement obligates

Defendants to pay Plaintiffs, collectively, fifty percent (50%) of Defendants' net

receipts from the licensing by Defendants or Defendants' Licensees of the Eminem

Masters to Music Download Providers and Mastertone Providers for sale.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a jury trial against Defendants on those

matters to be determined by a jury and further pray for judgment against

Defendants, and each of them, as follows:

1.    On the First Cause of Action, judgment awarding Plaintiffs

compensatory damages, the exact amount is to be determined at the time of trial;

2.    On the Second Cause of Action, an order and judgment declaring that

the March 9, 1998 Agreement and the 2003 Agreement obligates Defendants to

pay Plaintiffs, collectively, fifty percent (50%) of Defendants' net receipts from the

licensing by Defendants or Defendants' Licensees to Music Download Providers,

Mastertone Providers, and others for digital and other licensed uses of the Eminem

Masters, including, without limitation, digital downloads, digital streaming and

digital mastertones;

3.    An award of reasonable and actual attorneys' fees and costs for

services rendered to Plaintiffs in this action;

16

2008-FEB-14 14:20    +2132639413    T-816  P.018/018  F-182

4.    An award of pre- and post-judgment interest;

5.    Such other and further relief as the Court deems just and proper.

DATED: June 12, 2007    Respectfully submitted,

KING & BALLOW

Richard S. Busch (TN Bar No. 014594)
*Pro hac vice pending*
Paul H. Duvall (State Bar No. 73699)
9404 Genesee Avenue, Suite 340
La Jolla, CA 92037-1355
Telephone:  (858) 597-6000
Facsimile:  (838) 597-6008
pduvall@kingballow.com
rbusch@kingballow.com

Mark Block (State Bar No. 115457)
Christensen, Glaser, Fink, Jacobs, Weil, &
Shapiro, LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone:  (310) 282-6240
Facsimile:  (310) 556-2920
mblock@chrisglase.com

Attorneys for Plaintiffs

17

**EXHIBIT B**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the
# United States District Court
### Northern District of California

F.B.T. Productions, LLC, et al.

v.

Aftermath Records, et al.

**SUBPOENA IN A CIVIL CASE**
Case No. CV 07-3314 PSG (MANx)
Central District of California

TO:    Custodian of the Records
       Apple Computers, Inc.
       1 Infinite Loop
       Cupertino, CA 95014

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| | |
|---|---|
| Nogara Reporting Service<br>130 Battery Street, Suite 580<br>San Francisco, CA 94111 | January 28, 2008<br>10:00 A.M. |

See Exhibit A.

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Richard Busch* Plaintiff | 1/11/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard S. Busch, Esq.
King & Ballow
315 Union Street
1100 Union Street Plaza
Nashville, TN 37201
(615) 259-3456

### SCHEDULE A

### I. Definitions

A.    "You" or "Apple" refers to Apple Computer Inc. its agents, representatives, attorneys, and/or any other persons acting or purporting to act on its behalf.

B.    "RIAA" shall mean the Recording Industry Association of America (RIAA), its agents, representatives, attorneys, and/or any other persons acting or purporting to act on its behalf.

C.    "Aftermath" refers to Aftermath Records d/b/a Aftermath Entertainment its agents, representatives, attorneys, and/or any other persons acting or purporting to act on its behalf.

D.    "Interscope" refers to Interscope Records its agents, representatives, attorneys, and/or any other persons acting or purporting to act on its behalf.

E.    "UMG" or "Universal" refers to UMG Recordings, Inc., its parent company, its subsidiaries, its affiliates, and any other related company, as well as their agents, representatives, attorneys, and/or any other persons or entities acting or purporting to act on their behalf.

F.    "ARY" refers to ARY, Inc. its agents, representatives, attorneys, and/or any other persons acting or purporting to act on its behalf.

G.    "Document," "Electronically Stored Information," and "Things" are

1

defined to be synonymous in meaning and equal in scope to the usage of these terms in FRCP Rule 34. A draft or non-identical copy is a separate document, electronically stored information, or thing within the meaning of this term.

H.     "Communication" shall mean any transmission of information by oral, graphic, written, pictorial, or other perceptible means, including, but not limited to, telephone conversations, letters, documents, memoranda, notes, telegrams, facsimile, transmissions, electronic mail, meetings, and personal conversations.

I.     "And" and "or" each shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests for production of documents, electronically stored information, and things any information or document that might otherwise be construed to be outside its scope.

J.     References to the plural shall include the singular; references to the singular shall include the plural.

K.     References to the feminine shall include the masculine; references to the masculine shall include the feminine.

L.     All legal terms, accounting terms, and other technical terms associated with a particular industry, profession or identifiable body of knowledge shall have the meanings customarily and ordinarily associated with those terms with those terms within that industry, profession or discipline.

## II. DOCUMENT, ELECTRONICALLY STORED INFORMATION, AND THINGS REQUESTS

2

1.    Each and every document that in any way refers to, relates to, or pertains to the formation of the agreements between you and Universal, or any other record company, for the distribution of music in digital format, including but not limited to, the efforts between yourself, the RIAA, and/or any other third party to draft, structure, or characterize such agreements as reseller agreements or otherwise, and not license agreements.

2.    Each and every communication between yourself and the RIAA that in any way relates to, refers to, or pertains to any efforts to draft, structure, or characterize the agreements between yourself and Universal as reseller agreements or otherwise, and not license agreements.

3.    Each and every communication between yourself, Universal, and/or any other third party that in any way relates to, refers to, or pertains to any efforts to draft, structure, or characterize the agreements between yourself and Universal as reseller agreements or otherwise, and not license agreements.

4.    All drafts of the document entitled "Thoughts On Music," or documents and communications related thereto, authored by Steve Jobs, and released on February 6, 2007.

5.    Each and every document that identifies music as an "iTunes digital release," "iTunes release," or a release by iTunes.

6.    Each and every internal document or record referencing Universal or

3

other record company, or other rights owner, in which such entity is characterized as a licensor.

7.     Each and every agreement in which iTunes obtained the rights to release or sell an artist's music through an agreement directly with an artist, or its representatives, even if Universal or other record company also executed such agreement.

8.     Each and every agreement in which iTunes obtained the rights to release or sell an artist's music through an agreement directly with the owner, publisher, or administrator of the copyright in the underling musical composition, or their representatives, even if Universal or other record company also executed such agreement, including but not limited to all mechanical licenses.

9.     Each and every document referencing or relating to all downloads of the Eminem Masters, including but not limited to any financial information related thereto.

4

**EXHIBIT C**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

January 22, 2008

WRITER'S DIRECT LINE

(213) 683-9238

(213) 683-4038 FAX

Kelly.Klaus@mto.com

**BY E-MAIL AND U.S. MAIL**

Richard S. Busch, Esq.
King & Ballow
315 Union Street
1100 Union Street Plaza
Nashville, Tennessee 37201

Re:    _F.B.T. Productions, LLC et al. v. Aftermath Records et al._, Case No. CV
07-3314-PSG (C.D. Cal.)

Dear Mr. Busch:

We have become aware that you have been serving subpoenas on third parties in
the above-referenced case without complying with your obligations under Rule 45 to provide
notice of the subpoenas to us.

We are aware of four apparent instances of your violating Rule 45 in this manner:
your subpoena to the Recording Industry Association of American, your subpoena to Apple Inc.,
and your two subpoenas to MusicNet. We only became aware of the subpoenas to MusicNet
because your office inadvertently mailed the originals of these subpoenas to us. We still have
not received the notice that Rule 45(b)(1) requires for any subpoenas you have issued.

Among other things, the notice rule allows parties to the case an opportunity to
object to a requested production. _See_ 1991 Adv. Comm. Note to Subdivision (b); _Butler v.
Biocore Med. Techs., Inc._, 348 F.3d 1163, 1173 (10th Cir. 2003). Your failure to provide the
required notice threatens defendants' rights. The Court may strike your subpoenas or impose

4310386.1

MUNGER, TOLLES & OLSON LLP
Richard S. Busch, Esq.
January 22, 2008
Page 2

other sanctions on account of your violations. *See Florida Media, Inc. v. World Publs., LLC*, 236 F.R.D. 693, 695 (M.D. Fla. 2006). Our clients do not waive, but rather expressly reserve, all of their rights to relief on account of your non-compliance with the Rules to date.

If you have served any subpoenas without giving us notice under Rule 45(b)(1), please notify us immediately of the relevant parties and send us copies of all papers you have served on them. Please comply with the Rules on a going-forward basis.

Finally, as you know from your representation of the plaintiff LLCs in the *Eight Mile v. Apple* action, we represent Apple in that case. Your subpoena to Apple in this case obviously concerns matters related to the *Eight Mile* action. Your attempt to communicate directly with Apple on matters that obviously are related to that litigation may be a violation of the rules of professional conduct. Please be sure that this does not happen again.

As requested by your office, we are returning the originals of the four subpoenas referenced above with the original of this letter. Thank you for your immediate attention to these matters.

Sincerely,

Kelly M. Klaus

Enclosures (with mailed copy only)

4310186.1

**EXHIBIT D**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3314-PSG (MANx) | Date | April 29, 2008 |
|---|---|---|---|

| Title | *F.B.T. Productions, LLC, et al. v. Reel Media International, et al.* |
|---|---|

Present: The Honorable    MARGARET A. NAGLE, UNITED STATES MAGISTRATE JUDGE

| E. Carson | CS | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Paul H. Duvall | Daniel Scott Schecter |
| Mark L. Block | Colin B. Vandell |

**Proceedings:**  1.  Plaintiffs' and NonParty Apple's Application To File Joint Stipulation Of Plaintiffs F.B.T. Production, LLC, et al. And NonParty Apple Re Plaintiffs' Motion To Compel Further Response To Subpoena Under Seal ("Joint Application")

2.  Joint Stipulation Re Plaintiffs' Motion To Compel Further Response To Subpoena Served On NonParty Apple Computers, Inc. ("Plaintiffs' Motion")

The case is called.  Paul H. Duvall, of King and Ballow, and Mark L. Block, of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, appear on behalf of Plaintiffs.  Glenn D. Pomerantz and Melinda Eades LeMoine, of Munger, Tolles & Olson, LLP appear on behalf of defendants.  Daniel Scott Schecter and Colin B. Vandell, of Latham Watkins, appear on behalf of NonParty Apple Inc. ("Apple").

The Court denies the Joint Application, without prejudice, and orders that by no later than Tuesday, May 6, 2008, counsel for Apple shall file a declaration from an Apple employee **which details sufficient facts** to establish that proprietary, confidential information is set forth in the Joint Stipulation and/or related pleadings that justifies the filing of certain pleadings, or portions thereof, under seal.  Pending Apple's submission of that declaration, the Joint Stipulation and related pleadings shall remain lodged under seal and shall not be filed.

The Court hears argument regarding Plaintiffs' Motion, which is granted, in part, and denied, in part, as follows:

Plaintiffs' Motion is tentatively granted with respect to Request No. 1.  NonParty Apple shall produce all agreements between UMG and Apple concerning downloads of Plaintiffs' music, and all drafts and communications regarding those agreements, which are maintained in the files of the principal negotiators of these agreements.  If documents are withheld on the basis of attorney client privilege or attorney work product doctrine, then a privilege log shall also be prepared and served.  Plaintiffs' and Apple's counsel shall meet and confer in a good faith effort to define more clearly the scope of the files to be searched for responsive documents.  After the meet and confer

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3314-PSG (MANx) | Date | April 29, 2008 |
|---|---|---|---|

| Title | *F.B.T. Productions, LLC, et al. v. Reel Media International, et al.* |
|---|---|

process, Plaintiffs' counsel shall prepare a proposed order, which accurately reflects the Court's order with respect to the production. That order shall be submitted to Apple's counsel for review, and then lodged with the Court by no later than May 5, 2008.

Plaintiffs' Motion is denied as to Request No. 2 based upon Apple's representation that it does not have any documents regarding the communications between RIAA and Apple sought by this request in its possession or under its control.

Plaintiffs' Motion is denied as to Request No. 3.

Plaintiffs' Motion as to Request No. 4 is denied, without prejudice to rehearing if drafts of the subject Steve Jobs essay are referenced by Mr. Jobs in his deposition in this case.

Plaintiffs' Motion is granted as to Request No. 5. Apple shall produce all documents responsive to this request, which were recently produced in the case entitled Bridgeport Music, Inc. v. UMG Recordings, Inc., USDC Case No. 1:05-CV-06430 VM (JCF) (S.D.N.Y.).

Plaintiffs' Motion is denied as to Request No. 6.

Plaintiffs' Motion is denied as to Request No. 7.

Plaintiffs' Motion is denied as to Request No. 8.

Plaintiffs' Motion is granted as to Request No. 9. Apple shall produce all music download reports for Eminem content. The production shall be made by no later than May 9, 2008.

The Court schedules a follow-up telephonic status conference at 1:00 p.m. on Thursday, May 1, 2008. The Court will initiate the call with counsel.

**IT IS SO ORDERED.**

| | 1 | : | 25 |
|---|---|---|---|
| Initials of Preparer | efc | | |

**EXHIBIT E**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314-PSG (MANx) | | Date | May 6, 2008 |
|---|---|---|---|---|

| Title | *F.B.T. Productions, LLC, et al. v. Reel Media International, et al.* |
|---|---|

Present: The Honorable    MARGARET A. NAGLE, UNITED STATES MAGISTRATE JUDGE

| E. Carson | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:**    (IN CHAMBERS) Order Re Plaintiffs' Motion To Compel Further Response To Subpoena Served On NonParty Apple Inc.

On April 8, 2008, Plaintiffs F.B.T. Productions, LLC and Em2M, LLC ("Plaintiffs") filed a Joint Stipulation regarding plaintiffs' motion to compel responses to their subpoena duces tecum served on NonParty Apple Inc. ("Apple"). On April 29, 2008, the Court heard oral argument and ordered plaintiffs and Apple to meet and confer further in order to limit reasonably the scope of the search to be conducted by Apple for documents responsive to Request for Production No. 1. On May 5, 2008, plaintiffs and Apple each lodged a proposed order regarding the production of documents responsive to Request No. 1. The Court now rules as follows:

1.    Plaintiffs' motion to compel with regard to Request No. 1 is granted to the following extent:

      a.    On or before May 12, 2008, Apple shall produce, subject to the protective order entered into by plaintiffs and defendants, the following agreements:

            (i)    Apple/UMG agreements of December 2002 and 2006;
            (ii)    Amendments to Apple/UMG agreements dated October 2005, April 2006, and March 2007;
            (iii)    All other Apple/UMG agreements as described in Request No. 1 from 2001, to the present.

      b.    On or before May 12, 2008, Apple shall examine the files and computers utilized by Kevin Saul and Eddie Cue and produce the following documents: All non-privileged communications, including, but not limited to, emails

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3314-PSG (MANx) | Date | May 6, 2008 |
|---|---|---|---|
| Title | *F.B.T. Productions, LLC, et al. v. Reel Media International, et al.* | | |

between and among Apple and defendants regarding the drafting and negotiation of the Apple/UMG agreements.

c.   On or before May 14, 2008, Apple shall produce a privilege log pertaining to the production as described above.

d.   To the extent the production of documents of Kevin Saul and/or Eddie Cue indicates that Steve Jobs was involved in the negotiation or formation of any of the agreements (other than as a mere signatory to said agreement(s)), including, but not limited to, the initial Apple/UMG agreement dated December 2002, the parties shall immediately communicate telephonically with the Court to address whether a hearing should be promptly scheduled to determine if good cause exists to examine the files and computers possessed or controlled by Steve Jobs to locate documents responsive to Request No. 1. The Court directs counsel to meet and confer before May 12, 2008, if counsel for Apple determines, during the examination of the Saul and Cue documents, that the files of Mr. Jobs likely contain additional documents responsive to Request No. 1.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | efc |

**EXHIBIT F**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

1  Richard S. Busch (TN Bar No. 014594)
   *Attorney Pro Hac Vice*
2  KING & BALLOW
3  315 Union Street, Suite 1100
   Nashville, TN 37201
4  (615) 259-3456   Facsimile: (615) 726-5417
5
   Paul H. Duvall (State Bar No. 73699)
6  KING & BALLOW
7  9404 Genesee Avenue, Suite 340
   La Jolla, CA 92037-1355
8  (858) 597-6000   Facsimile: (838) 597-6008
9
   Mark L. Block (State Bar No. 115457)
10 Christensen, Glaser, Fink, Jacobs, Weil, & Shapiro, LLP
11 10250 Constellation Blvd., 19th Floor
   Los Angeles, CA 90067
12
13 (310) 553-3000   Facsimile: (310) 556-2920
   Attorneys for Plaintiffs F.B.T. Productions, LLC and Em2M, LLC
14
15          UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
16

| | |
|---|---|
| 17 F.B.T. PRODUCTIONS, LLC, and Em2M, LLC, | Case No. CV 07-3314 PSG (MANx) |
| 18 | |
| 19    Plaintiffs, | NOTICE OF DEPOSITION OF STEVE JOBS |
| 20 v. | |
| 21 AFTERMATH RECORDS doing business as AFTERMATH ENTERTAINMENT; INTERSCOPE RECORDS; UMG RECORDINGS, INC.; and ARY, INC., | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26    Defendants. | |

27

28

1

TO ALL DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs F.B.T. Productions, LLC, and Em2M, LLC will take the deposition upon oral examination of Steve Jobs.

The deposition will take place on March 27, 2008, at 9:00 am P.S.T. at the offices of Latham & Watkins, LLP, 140 Scott Drive, Menlo Park, CA 94025, and continue from day to day, Sundays and holidays excluded, until completed, before a notary public or other officer authorized to administer oaths. Pursuant to Rule 30(b)(2), the deposition shall be recorded by videographic and stenographic means.

DATED: March 3, 2008                Respectfully submitted,


KING & BALLOW


Richard S. Busch (TN Bar No. 014594)
Paul H. Duvall (State Bar No. 73699)
- and -
Mark Block (State Bar No. 115457)
Christensen, Miller, Fink, Jacobs, Glaser

Attorneys for Plaintiffs

2

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

1

2     I, Sherie Johnson, declare:

3     I am employed in the County of San Diego, State of California. I am over the

4 age of eighteen years, and not a party to the within action. My business address is 9404 Genesee Avenue, Suite 340; La Jolla, CA 92037. On March 3, 2008, I

5 instructed First Legal Support Services to personally serve a true copy of the

6 attached documents entitled **NOTICE OF DEPOSITION OF STEVE JOBS** and **SUBPOENA IN A CIVIL CASE TO STEVE JOBS** upon:

| | |
|---|---|
| 7  Glenn D. Pomerantz, Esq. | Daniel S. Schecter, Esq. |
| Kelly M. Klaus, Esq. | Colin B. Vandell, Esq. |
| 8  Kimberly D. Encinas, Esq. | LATHAM & WATKINS |
| 9  MUNGER, TOLLES & OLSON LLP | 633 West Fifth Street, Suite 4000 |
| 355 South Grand Avenue, 35th Floor | Los Angeles, CA 90071-2007 |
| 10  Los Angeles, CA 90071-1560 | On behalf of Steve Jobs |
| 11  Attorneys for Defendants | |

12 I also instructed First Legal Support Services to prepare a Proof of Personal Service.

13

14     I also served a true copy of the attached documents entitled **NOTICE OF DEPOSITION OF STEVE JOBS** and **SUBPOENA IN A CIVIL CASE TO**

15 **STEVE JOBS** by placing same in an addressed sealed envelope clearly labeled to

16 identify the persons being served at the address shown below and placed said envelope for collection with the United States Postal Service located at 9404

17 Genesee Avenue; La Jolla, California 92037, on March 3, 2008, following ordinary

18 business practices:

| | |
|---|---|
| 18  Glenn D. Pomerantz, Esq. | Daniel S. Schecter, Esq. |
| 19  Kelly M. Klaus, Esq. | Colin B. Vandell, Esq. |
| Kimberly D. Encinas, Esq. | LATHAM & WATKINS |
| 20  MUNGER, TOLLES & OLSON LLP | 633 West Fifth Street, Suite 4000 |
| 21  355 South Grand Avenue | Los Angeles, CA 90071-2007 |
| Thirty-Fifth Floor | On behalf of Steve Jobs |
| 22  Los Angeles, CA 90071-1560 | |
| 23  Attorneys for Defendants | |

24     I declare that I am employed in the office of a member of the bar of this Court

25 at whose direction the service was made. Executed on March 3, 2008, at La Jolla,

26 California.

27                       _Sherie Johnson_

Sherie Johnson

28

Klog &
Ballow

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the
## United States District Court
### Northern District of California

F.B.T. Productions, LLC, et al.

v.

Aftermath Records, et al.

**SUBPOENA IN A CIVIL CASE**
Case No. CV 07-3314 PSG (MANx)
Central District of California

TO: Steve Jobs, CEO Apple, Inc.
c/o Daniel S. Schecter, Esq.
Colin B. Vandell, Esq.
Latham & Watkins, LLP
644 West Fifth Street
Suite 4000
Los Angeles, CA 90071-2007

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| | DATE AND TIME |
|---|---|
| Latham & Watkins, LLP<br>140 Scott Drive<br>Menlo Park CA 94025 | March 27, 2008<br>9:00 AM P.S.T. |

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Richard S. Busch* for ARG     Plaintiff | 3/3/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard S. Busch, Esq.
King & Ballow
315 Union Street
1100 Union Street Plaza
Nashville, TN 37201
(615) 259-3456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
DATE                                        SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C&D:

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.
    (2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
    (3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i)    fails to allow reasonable time for compliance;
        (ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
        (iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or
        (iv)    subjects a person to undue burden.
    (B)    If a subpoena
        (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.
(d)    DUTIES IN RESPONDING TO SUBPOENA.
    (1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# CERTIFICATE OF SERVICE

1  STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

2  I, Sherie Johnson, declare:

3  I am employed in the County of San Diego, State of California. I am over the

4  age of eighteen years, and not a party to the within action. My business address is

5  9404 Genesee Avenue; Suite 340; La Jolla, CA 92037. On March 3, 2008, I instructed First Legal Support Services to personally serve a true copy of the

6  attached documents entitled NOTICE OF DEPOSITION OF STEVE JOBS and SUBPOENA IN A CIVIL CASE TO STEVE JOBS upon:

| | |
|---|---|
| 7  Glenn D. Pomerantz, Esq. | Daniel S. Schecter, Esq. |
| 8  Kelly M. Klaus, Esq. | Colin B. Vandell, Esq. |
| Kimberly D. Encinas, Esq. | LATHAM & WATKINS |
| 9  MUNGER, TOLLES & OLSON LLP | 633 West Fifth Street, Suite 4000 |
| 10  355 South Grand Avenue, 35th Floor | Los Angeles, CA 90071-2007 |
| Los Angeles, CA 90071-1560 | On behalf of Steve Jobs |
| 11  Attorneys for Defendants | |

12  I also instructed First Legal Support Services to prepare a Proof of Personal Service.

13

14  I also served a true copy of the attached documents entitled NOTICE OF DEPOSITION OF STEVE JOBS and SUBPOENA IN A CIVIL CASE TO

15  STEVE JOBS by placing same in an addressed sealed envelope clearly labeled to identify the persons being served at the address shown below and placed said

16  envelope for collection with the United States Postal Service located at 9404

17  Genesee Avenue; La Jolla, California 92037, on March 3, 2008, following ordinary

18  business practices:

| | |
|---|---|
| Glenn D. Pomerantz, Esq. | Daniel S. Schecter, Esq. |
| 19  Kelly M. Klaus, Esq. | Colin B. Vandell, Esq. |
| Kimberly D. Encinas, Esq. | LATHAM & WATKINS |
| 20  MUNGER, TOLLES & OLSON LLP | 633 West Fifth Street, Suite 4000 |
| 21  355 South Grand Avenue | Los Angeles, CA 90071-2007 |
| Thirty-Fifth Floor | On behalf of Steve Jobs |
| 22  Los Angeles, CA 90071-1560 | |
| 23  Attorneys for Defendants | |

24  I declare that I am employed in the office of a member of the bar of this Court

25  at whose direction the service was made. Executed on March 3, 2008, at La Jolla,

26  California.

27  _Sherie Johnson_

King &
Ballow

28

PROOF OF SERVICE                                    CASE # CV 07-03314 PSG (MANx)

**EXHIBIT G**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

KING & BALLOW

LAW OFFICES

LA JOLLA EASTGATE

9404 GENESEE AVENUE, SUITE 340

LA JOLLA, CALIFORNIA 92037-1355

TELEPHONE: 858/597-6000

FACSIMILE: 858/597-6008

www.kingballow.com

March 13, 2008

<u>**VIA EMAIL AND FIRST CLASS MAIL**</u>
**daniel.schecter@lw.com**

Daniel Scott Schecter, Esq.
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Re:  *F.B.T. Prods. LLC v. Aftermath Records* - Case No. CV07-3314 PSG(MANx)

Dear Mr. Schecter:

I write to you in response to your letter of March 10, 2008 pursuant to Northern District of California Local Rule 37-1 regarding our request to depose Steve Jobs, of Apple, Inc.  On March 3, 2008, we served a notice of deposition for Mr. Jobs on your law firm.   Mr. Jobs' deposition is currently scheduled for March 27, 2008.

Your letter opposes the taking of Mr. Jobs' deposition and states that the deposition is "absolutely precluded as a matter of law."  Your letter cites to the case of <u>Thomas v. Int'l Bus. Machs.</u>, a Tenth Circuit case dealing with the "apex" deposition.  <u>Thomas v. IBM</u> is distinguishable from this matter for several reasons: 1) the Plaintiff in <u>Thomas</u> violated local rules concerning time requirements for noticing a deposition, 2) Akers, the Chairman of IBM's Board of Directors, provided a declaration stating that he did not have any personal knowledge regarding the matters at issue in the case, and 3) the Plaintiff had not made attempts to gather the information using less intrusive means.  <u>Thomas</u> is also distinguishable because it refers to the deposition of an officer of a party defendant.  In this case, Apple is a third party.  Moreover, as you implicitly recognize, there is no Ninth Circuit case law on this issue.

Recent district court cases within the Ninth Circuit have discussed the "apex" deposition rule.  In <u>Webside Story v. NetRatings,Inc.</u>, the Southern District of California stated that there were two prongs to the "apex" rule: 1) Whether or not the high-level deponent has unique, first hand, non-repetitive knowledge of the facts at issue, and 2) whether the party seeking the deposition has exhausted other less intrusive discovery methods.  <u>Webside Story v. NetRatings, Inc.</u>, 2007 U.S. Dist. Lexis 20481, (S.D.Cal. 2007).

NASHVILLE OFFICE:

1100 UNION STREET PLAZA · 315 UNION STREET · NASHVILLE, TENNESSEE 37201 · TELEPHONE: 615/259-3456 · FACSIMILE: 615/254-7907

Daniel Scott Schecter, Esq.
March 13, 2008
Page 2

In Celerity, Inc. v. Ultra Clean Holding, Inc., the Northern District of California discussed the "apex" rule in the context of a deposition of a notice of deposition to CEO of Celerity. Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 U.S. Dist. Lexis 8295 (N.D. Cal. 2007). In that case, the court noted that the "apex" rule was not an absolute bar to the deposition of the CEO and stated that Ultra Clean could renew its notice of deposition after less intrusive methods failed to provide the discovery being sought.

Our request to depose Mr. Jobs is distinguishable from the cases discussed above. In this case, we have given proper notice in compliance with the local rules. Less intrusive methods are not available as Rule 33, Federal Rules of Civil Procedure limits interrogatories to being served only on parties to the litigation. In this matter, Apple is a non-party. Furthermore, we have attempted to use subpoenas *duces tecum* to obtain related documents. As you know from previous meet and confer sessions, you have adamantly refused to either locate and/or produce such documents.

Depositions of lower level Apple employees would not be sufficient. The discovery that we are seeking is based on an essay authored by Mr. Jobs himself in which he discussed his thoughts on the current state of the industry with regards to Digital Rights Management. As a result, Mr. Jobs' knowledge is uniquely personal and not available by deposing a lower-level employee.

You stated in your letter that our deposition notice to Mr. Jobs "smacks of harassment." This is not the case. Typically, the "apex" rule is invoked in cases where one party seeks to depose a high ranking official of the other party who has limited knowledge of the relevant facts, where there is at least an implied improper strategic purpose. Apple is not a party to this litigation. As a result, the deposition subpoena served on Mr. Jobs serves no improper (or even any) strategic purpose. We simply need Mr. Jobs to testify concerning the essay that he personally authored and his statements which are directly relevant and essential to this case.

In an effort to come to a reasonable accord, we would agree to reasonable limitations concerning the length and the location of the depositions. If Mr. Jobs does not appear at his noticed deposition, we will move to compel and seek sanctions. Please contact me to confer regarding this dispute in accordance with the requirements of Local Rule 37-1. I can be reached at (858) 597-6000.

Very truly yours,

Paul H. Duvall

PHD:sj

**EXHIBIT H**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

# Thoughts on Music

Steve Jobs
February 6, 2007

With the stunning global success of Apple's iPod music player and iTunes online music store, some have called for Apple to "open" the digital rights management (DRM) system that Apple uses to protect its music against theft, so that music purchased from iTunes can be played on digital devices purchased from other companies, and protected music purchased from other online music stores can play on iPods. Let's examine the current situation and how we got here, then look at three possible alternatives for the future.

To begin, it is useful to remember that all iPods play music that is free of any DRM and encoded in "open" licensable formats such as MP3 and AAC. iPod users can and do acquire their music from many sources, including CDs they own. Music on CDs can be easily imported into the freely-downloadable iTunes jukebox software which runs on both Macs and Windows PCs, and is automatically encoded into the open AAC or MP3 formats without any DRM. This music can be played on iPods or any other music players that play these open formats.

The rub comes from the music Apple sells on its online iTunes Store. Since Apple does not own or control any music itself, it must license the rights to distribute music from others, primarily the "big four" music companies: Universal, Sony BMG, Warner and EMI. These four companies control the distribution of over 70% of the world's music. When Apple approached these companies to license their music to distribute legally over the Internet, they were extremely cautious and required Apple to protect their music from being illegally copied. The solution was to create a DRM system, which envelopes each song purchased from the iTunes store in special and secret software so that it cannot be played on unauthorized devices.

Apple was able to negotiate landmark usage rights at the time, which include allowing users to play their DRM protected music on up to 5 computers and on an unlimited number of iPods. Obtaining such rights from the music companies was unprecedented at the time, and even today is unmatched by most other digital music services. However, a key provision of our agreements with the music companies is that if our DRM system is compromised and their music becomes playable on unauthorized devices, we have only a small number of weeks to fix the problem or they can withdraw their entire music catalog from our iTunes store.

To prevent illegal copies, DRM systems must allow only authorized devices to play the protected music. If a copy of a DRM protected song is posted on the Internet, it should not be able to play on a downloader's computer or portable music device. To achieve this, a DRM system employs secrets. There is no theory of protecting content other than keeping secrets. In other words, even if one uses the most sophisticated cryptographic locks to protect the actual music, one must still "hide" the keys which unlock the music on the user's computer or portable music player. No one has ever implemented a DRM system that does not depend on such secrets for its operation.

The problem, of course, is that there are many smart people in the world, some with a lot of time on their hands, who love to discover such secrets and publish a way for everyone to get free (and stolen) music. They are often successful in doing just that, so any company trying to protect content using a DRM must frequently update it with new and harder to discover secrets. It is a cat-and-mouse game. Apple's DRM system is called FairPlay. While we have had a few breaches in FairPlay, we have been able to successfully repair them through updating the iTunes store software, the iTunes jukebox software and software in the iPods themselves. So far we have met our commitments to the music companies to protect their music, and we have given users the most liberal usage rights available in the industry for legally downloaded music.

With this background, let's now explore three different alternatives for the future.

The first alternative is to continue on the current course, with each manufacturer competing freely with their own "top to bottom" proprietary systems for selling, playing and protecting music. It is a

very competitive market, with major global companies making large investments to develop new music players and online music stores. Apple, Microsoft and Sony all compete with proprietary systems. Music purchased from Microsoft's Zune store will only play on Zune players; music purchased from Sony's Connect store will only play on Sony's players; and music purchased from Apple's iTunes store will only play on iPods. This is the current state of affairs in the industry, and customers are being well served with a continuing stream of innovative products and a wide variety of choices.

Some have argued that once a consumer purchases a body of music from one of the proprietary music stores, they are forever locked into only using music players from that one company. Or, if they buy a specific player, they are locked into buying music only from that company's music store. Is this true? Let's look at the data for iPods and the iTunes store – they are the industry's most popular products and we have accurate data for them. Through the end of 2006, customers purchased a total of 90 million iPods and 2 billion songs from the iTunes store. On average, that's 22 songs purchased from the iTunes store for each iPod ever sold.

Today's most popular iPod holds 1000 songs, and research tells us that the average iPod is nearly full. This means that only 22 out of 1000 songs, or under 3% of the music on the average iPod, is purchased from the iTunes store and protected with a DRM. The remaining 97% of the music is unprotected and playable on any player that can play the open formats. It's hard to believe that just 3% of the music on the average iPod is enough to lock users into buying only iPods in the future. And since 97% of the music on the average iPod was not purchased from the iTunes store, iPod users are clearly not locked into the iTunes store to acquire their music.

The second alternative is for Apple to license its FairPlay DRM technology to current and future competitors with the goal of achieving interoperability between different company's players and music stores. On the surface, this seems like a good idea since it might offer customers increased choice now and in the future. And Apple might benefit by charging a small licensing fee for its FairPlay DRM. However, when we look a bit deeper, problems begin to emerge. The most serious problem is that licensing a DRM involves disclosing some of its secrets to many people in many companies, and history tells us that inevitably these secrets will leak. The Internet has made such leaks far more damaging, since a single leak can be spread worldwide in less than a minute. Such leaks can rapidly result in software programs available as free downloads on the Internet which will disable the DRM protection so that formerly protected songs can be played on unauthorized players.

An equally serious problem is how to quickly repair the damage caused by such a leak. A successful repair will likely involve enhancing the music store software, the music jukebox software, and the software in the players with new secrets, then transferring this updated software into the tens (or hundreds) of millions of Macs, Windows PCs and players already in use. This must all be done quickly and in a very coordinated way. Such an undertaking is very difficult when just one company controls all of the pieces. It is near impossible if multiple companies control separate pieces of the puzzle, and all of them must quickly act in concert to repair the damage from a leak.

Apple has concluded that if it licenses FairPlay to others, it can no longer guarantee to protect the music it licenses from the big four music companies. Perhaps this same conclusion contributed to Microsoft's recent decision to switch their emphasis from an "open" model of licensing their DRM to others to a "closed" model of offering a proprietary music store, proprietary jukebox software and proprietary players.

The third alternative is to abolish DRMs entirely. Imagine a world where every online store sells DRM-free music encoded in open licensable formats. In such a world, any player can play music purchased from any store, and any store can sell music which is playable on all players. This is clearly the best alternative for consumers, and Apple would embrace it in a heartbeat. If the big four music companies would license Apple their music without the requirement that it be protected with a DRM, we would switch to selling only DRM-free music on our iTunes store. Every iPod ever made will play this DRM-free music.

Why would the big four music companies agree to let Apple and others distribute their music without using DRM systems to protect it? The simplest answer is because DRMs haven't worked, and may

never work, to halt music piracy. Though the big four music companies require that all their music sold online be protected with DRMs, these same music companies continue to sell billions of CDs a year which contain completely unprotected music. That's right! No DRM system was ever developed for the CD, so all the music distributed on CDs can be easily uploaded to the Internet, then (illegally) downloaded and played on any computer or player.

In 2006, under 2 billion DRM-protected songs were sold worldwide by online stores, while over 20 billion songs were sold completely DRM-free and unprotected on CDs by the music companies themselves. The music companies sell the vast majority of their music DRM-free, and show no signs of changing this behavior, since the overwhelming majority of their revenues depend on selling CDs which must play in CD players that support no DRM system.

So if the music companies are selling over 90 percent of their music DRM-free, what benefits do they get from selling the remaining small percentage of their music encumbered with a DRM system? There appear to be none. If anything, the technical expertise and overhead required to create, operate and update a DRM system has limited the number of participants selling DRM protected music. If such requirements were removed, the music industry might experience an influx of new companies willing to invest in innovative new stores and players. This can only be seen as a positive by the music companies.

Much of the concern over DRM systems has arisen in European countries. Perhaps those unhappy with the current situation should redirect their energies towards persuading the music companies to sell their music DRM-free. For Europeans, two and a half of the big four music companies are located right in their backyard. The largest, Universal, is 100% owned by Vivendi, a French company. EMI is a British company, and Sony BMG is 50% owned by Bertelsmann, a German company. Convincing them to license their music to Apple and others DRM-free will create a truly interoperable music marketplace. Apple will embrace this wholeheartedly.

**EXHIBIT I**

TO THE DECLARATION OF COLIN B. VANDELL IN SUPPORT OF NON-PARTY STEVE
JOBS'S OBJECTION TO ORDER DENYING MR. JOBS'S MOTION FOR PROTECTIVE
ORDER TO QUASH "APEX" DEPOSITION SUBPOENA

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   F.B.T. Productions, LLC, et al.,        )      Case No.: C 08-80040 RMW (PVT)
                                             )
13                       Plaintiffs,         )      **ORDER DENYING NON-PARTY**
                                             )      **STEVE JOBS' MOTION TO QUASH**
14        v.                                 )      **SUBPOENA**
                                             )
15   AFTERMATH RECORDS, et al.,              )
                                             )
16                       Defendants.         )
                                             )
17   _____)

18        On April 29, 2008, the parties and non-party Steve Jobs ("Jobs") appeared before Magistrate

19   Judge Patricia V. Trumbull for hearing on Jobs' motion to quash.[1]  Based on the briefs and

20   arguments submitted,

21        IT IS HEREBY ORDERED that Jobs' motion to quash is DENIED, however in light of the

22   narrow subject matter of the deposition sought, the court finds it appropriate to limit the duration of

23   the deposition to two hours.

24        Jobs has not shown that appearing for deposition would impose an undue burden on him that

25   would warrant quashing the subpoena entirely.  "A strong showing is required before a party will be

26   denied entirely the right to take a deposition."  *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429

27

28        [1]    The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

                                    ORDER, *page 1*

1  (9th Cir. 1975) (district court erred in granting protective order ordering plaintiff not to depose

2  Herald-Examiner's publisher when plaintiff suggested possible information publisher might have

3  that others did not). Here, although one of Apple's in-house counsel has submitted a declaration[2]

4  containing conclusory assertions about Jobs having a "busy" schedule, there is no declaration that

5  states *specific facts* from which the court could conclude that it would be unduly burdensome for

6  Jobs to appear for a short deposition.[3] Absent at least *some* actual showing of undue burden, there is

7  no legal authority for requiring Defendants to use purportedly less burdensome means of obtaining

8  the discovery before allowing "apex" depositions. *See* FED.R.CIV.PRO. 26(c) (authorizing protection

9  from *undue* burden "for good cause shown").

10       Protection from "apex" depositions is particularly inappropriate where, as here, it appears

11  that the deponent may have first-hand knowledge of a relevant fact.[4] Plaintiffs assert, and Jobs does

12  not deny, that Jobs himself executed the original agreement between Apple and Defendant UMG

13  Recordings, Inc. (the "iTunes Agreement"). The nature of the iTunes Agreement is relevant to the

14  present litigation, because the contract at issue in this litigation provides for different royalty rates

15  depending on whether the recordings covered by the contract are sold or licensed. Contrary to Jobs'

16  argument, there *are* situations in which a contracting party's subjective understanding may be

17  ――――――――――

18      [2] Plaintiffs objected to Paragraph 17 of Saul's declaration on the grounds that it is not based on Saul's personal knowledge, and that, to the extent it is based on statements by others, it is hearsay. Jobs responded that the passage is based on Saul's own observation of the essay itself and its placement on the public iTunes website. The court sustains Plaintiffs' objections, and strikes Paragraph 17 from the declaration. This court's Local Rule 7-5(b) prohibits inclusion of conclusions or argument in declarations, and provides that such declarations may be stricken in whole or in part. Saul's assertions are not factual evidence, they are merely conclusions and argument based on speculation about Jobs' "intent" in writing the article (only Jobs has personal knowledge of his intent).

19

20

21

22      [3] Jobs himself did not submit any declaration setting forth any facts that demonstrate that appearing for a short deposition would unduly interfere with his ability to fulfill his work obligations.

23

24      [4] Because of the potential for abuse, courts do sometimes protect high-level corporate officers from depositions when the officer has no first-hand knowledge of relevant facts or where the testimony would be repetitive. *See Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). However, where a corporate officer may have *any* first hand knowledge of relevant facts, the deposition should be allowed. *See Blankenship*, 519 F.2d at 429; *see also, Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (approving denial of Howard Hughes' motion for protective order because he "probably had some knowledge" regarding the substance of the plaintiffs' claims). Further, a claimed lack of knowledge or recollection does not provide sufficient grounds for a protective order, because the opposing party is entitled to test that lack of knowledge or recollection. *See Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn. 1974); and *Travelers Rental Co., Inc.*, 116 F.R.D. 140, 143 (D. Mass. 1987).

25

26

27

28

1    relevant to the interpretation of a contract. *See, e.g.,* CAL.CIV.CODE, § 1649 ("If the terms of a

2    promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the

3    promisor believed, at the time of making it, that the promisee understood it.")

4         Jobs' *Thoughts on Music* essay provides at least some reason to believe that Jobs understood

5    the nature of iTunes Agreement to be a license rather than a sale. Under all the circumstances, the

6    court finds it appropriate to allow the deposition, but to limit it to two hours. *See* FED.R.CIV.PRO.

7    26(b)(2)(c)(iii).

8    Dated: *5/1/08*

9                                        *Patricia V. Trumbull*
                                         PATRICIA V. TRUMBULL
10                                       United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28