```
 1                  UNITED STATES DISTRICT COURT              ORIGINAL

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4

 5

 6   F.B.T. PRODUCTIONS, LLC AND EM2M,  )
     LLC,                               )   CASE NO.
                                        )   C 08-80040 RMW (PVT)
 7                                      )
                      PLAINTIFFS,       )
 8          V.                          )
                                        )
 9   AFTERMATH RECORDS, INTERSCOPE      )   SAN JOSE, CA
     RECORDS, UMG RECORDING, INC., AND  )   APRIL 29, 2008
10   ARY, INC.                          )
                                        )   NON-PARTY STEVE JOBS'
11                    DEFENDANTS.       )   MOTION TO QUASH
     _____)
12

13
                        TRANSCRIPT OF PROCEEDINGS
14              BEFORE THE HONORABLE PATRICIA V. TRUMBULL
                  UNITED STATES DISTRICT MAGISTRATE JUDGE
15

16
     A P P E A R A N C E S:
17
     FOR THE PLAINTIFFS:          NO APPEARANCE
18
     FOR NON-PARTY DEPONENT       GEORGE A. RILEY, ESQ.
19   STEVE JOBS                   O'MELVENY & MYERS LLP
                                  EMBARCADERO CENTER WEST
20                                275 BATTERY STREET
                                  SAN FRANCISCO, CA  94111
21                                TEL: 415-984-8741
                                  FAX: 415-984-8701
22                                GRILEY@OMM.COM

23
                (APPEARANCES CONTINUED ON THE NEXT PAGE)
24

25   COURT REPORTER:              JANA L. RIDENOUR, CSR
                                  LICENSE NO. 9302
```

RECEIVED 2008 MAY 19 PM 3:03 RICHARD W. WIEKING CLERK U.S. DISTRICT COURT N. DIST. OF CA. S.J.

```
 1   A P P E A R A N C E S:    (CONTINUED)

 2   FOR THE DEFENDANTS:        RICHARD S. BUSCH, ESQ.
                                KING & BALLOW
 3                              315 UNION STREET PLAZA
                                SUITE 1100
 4                              NASHVILLE, TN  37201
                                TEL:  615-259-3456
 5                              FAX:  615-726-5417
                                RBUSCH@KINGBALLOW.COM
 6
                                BLANCA FROMM YOUNG, ESQ.
 7                              MUNGER, TOLLES & OLSON LLP
                                560 MISSION STREET
 8                              27TH FLOOR
                                SAN FRANCISCO, CA  94105
 9                              TEL:  415-512-4019
                                FAX:  415-512-4077
10                              BLANCA.YOUNG@MTO.COM
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1  SAN JOSE, CALIFORNIA                          APRIL 29, 2008
 2                    P R O C E E D I N G S
 3  THAT.
 4            THE COURT:  F.B.T. PRODUCTIONS VERSUS AFTERMATH
 5  RECORDS, ET AL, C 08-80040 RMW.
 6            MR. RILEY:  GOOD MORNING, YOUR HONOR.  GEORGE
 7  RILEY; I REPRESENT STEVE JOBS, THE MOVING PARTY.
 8            MR. BUSCH:  RICHARD BUSCH ON BEHALF OF F.B.T.
 9  PRODUCTIONS, YOUR HONOR.
10            MS. YOUNG:  GOOD MORNING, YOUR HONOR.  BLANCA
11  YOUNG FOR THE DEFENDANTS.
12            THE COURT:  THIS IS STEVE JOBS' MOTION TO
13  QUASH.
14            MR. RILEY:  YES.
15            THE COURT:  PLEASE PROCEED.
16            MR. RILEY:  YOUR HONOR, THE UNDERLYING ISSUES
17  IN THIS CASE ARE ONE, SOLELY OF CONTRACT INTERPRETATION.
18  THE PLAINTIFFS IN THIS CASE ARE SEEKING BREACH OF
19  CONTRACT REMEDIES AGAINST A PARTY TO WHOM APPLE IS NOT
20  CONTRACTUALLY OBLIGATED WITH RESPECT TO THE UNDERLYING
21  AGREEMENT.  AND THE EXACT LANGUAGE IN DISPUTE, I THINK
22  IT'S IMPORTANT TO FOCUS ON.  IT SAYS, "ON MASTERS
23  LICENSED TO THIRD PARTIES."  THE PHRASE IN THE UNDERLYING
24  CONTRACT BETWEEN EMINEM AND HIS RECORD COMPANY IS "ON
25  MASTERS LICENSE TO OTHERS" FOR THE MANUFACTURE OF RECORDS
```

1  OR OTHER USES.  THAT'S THE UNDERLYING PHRASE IN DISPUTE.
2           MR. JOBS WROTE AN ESSAY ABOUT DIGITAL RIGHTS
3  MANAGEMENT, NOTHING TO DO WITH AGREEMENTS BETWEEN ARTISTS
4  AND THEIR RECORD COMPANIES.  AND IN THAT ESSAY, HE USES
5  THE PHRASE, "APPLE DOES NOT OWN THE MUSIC."  WE ALL AGREE
6  ON THAT.  APPLE LICENSED THE DISTRIBUTION RIGHTS FROM
7  THIRD PARTIES, SUCH AS THE MAJOR LABELS.  NOT ANYTHING
8  ABOUT MASTERS, NOT LICENSING MASTERS, NOTHING REFERRING
9  TO THE TERMS OF ART WHICH ARE AT DISPUTE IN THE
10 UNDERLYING AGREEMENT.
11          NOW, SOLELY ON THE BASIS OF THAT ESSAY AND THE
12 DESIRE THAT THE PLAINTIFFS HAD TO DEPOSE MR. JOBS ON HIS
13 VIEWS, THEY SUBPOENAED HIS DEPOSITION IN THE MIDDLE OF A
14 DISPUTE ABOUT WHAT DOCUMENTS APPLE WOULD HAVE TO PRODUCE,
15 WITHOUT WAITING TO LOOK AT THOSE DOCUMENTS.
16          NOW, APPLE HAS PRODUCED THOSE DOCUMENTS -- A
17 MAJORITY OF THOSE DOCUMENTS -- ON APRIL 15TH, AND THIS
18 MORNING IN THE CENTRAL DISTRICT OF CALIFORNIA THERE IS A
19 MOTION TO COMPEL ON CALENDAR WITH REGARD TO THE REMAINING
20 DOCUMENTS.  BUT WITHOUT LOOKING AT ANY OF THOSE DOCUMENTS
21 OR EXHAUSTING IN ANY WAY THE EFFORT TO EXPLORE THE
22 CONTRACTUAL RELATIONSHIPS -- NOT OPINIONS, BUT THE
23 CONTRACTUAL RELATIONSHIPS BETWEEN APPLE AND UMG -- THEY
24 NOTICED MR. JOBS' DEPOSITION.  AND WE TIMELY BROUGHT ON
25 THIS MOTION FOR PROTECTIVE ORDER.  AND CLEARLY IN THIS

```
 1   CASE, THAT SHOULD BE GRANTED.
 2           I THINK THREE POINTS SHOULD BE MADE ABOUT
 3   MR. JOBS' PHRASE:
 4           FIRST, IT DOES NOT REFER AT ALL TO ANY SPECIFIC
 5   AGREEMENT.  IT IS A GENERAL PHRASE THAT APPLE LICENSED
 6   THE RIGHTS TO DISTRIBUTE MUSIC.
 7           SECOND, IT DOES REFER TO THE KEY UNDERLYING
 8   CONCEPT OF A MASTER, AND THE INTERPRETATION OF MASTER AND
 9   MASTER LICENSE IS A MATTER OF CONTRACT DISPUTE TO WHICH
10   APPLE HAS NO KNOWLEDGE; MR. JOBS HAS NO KNOWLEDGE
11   WHATSOEVER.
12           AND THEN, FINALLY, EVEN IF HE DID HAVE AN
13   OPINION ABOUT THE UNDERLYING CONTRACTUAL ISSUES -- WHICH
14   HE DOESN'T -- THAT OPINION WOULD BE COMPLETELY IRRELEVANT
15   HERE.
16           SO SOLELY ON THE BASIS OF RELEVANCY,
17   PARTICULARLY AGAINST THE THIRD PARTY, THE MOTION FOR
18   PROTECTIVE ORDER SHOULD BE GRANTED.
19           AND FINALLY, THERE IS NO DISPUTE HERE THAT
20   MR. JOBS IS AT THE APEX OF A CORPORATE ORGANIZATION; IN
21   FACT, TWO ORGANIZATIONS -- THE WALT DISNEY COMPANY AND
22   APPLE -- AND THIS WOULD CLEARLY IMPOSE A BURDEN ON HIM.
23   AND THEY HAVE NOT MET IN ANY WAY THE REQUIREMENTS THAT
24   THIS COURT AND OTHERS HAVE SET FORTH FOR AN APEX
25   DEPOSITION; NAMELY, UNIQUE, FIRSTHAND KNOWLEDGE,
```

1   NONREPETITIVE OF THE ISSUES IN DISPUTE, WHICH HERE ARE
2   SOLELY CONTRACTUAL ISSUES OF WHICH MR. JOBS HAS NO
3   KNOWLEDGE WHATSOEVER.
4           THE COURT: RESPONSE? WHY WOULD YOU THINK,
5   OTHER THAN MR. JOBS GETTING UP AND TALKING ABOUT SUCH
6   THINGS, THAT INFORMATION FROM HIM IS HELPFUL IN YOUR
7   CASE? AND WHY SHOULD I LET YOU DO THIS?
8           MR. BUSCH: NOT ONLY IS IT HELPFUL, YOUR
9   HONOR -- WITH ALL DUE RESPECT TO OPPOSING COUNSEL -- IT
10  MAY BE IN FACT OUTCOME DETERMINATIVE. I THINK THAT IT'S
11  IMPORTANT TO GO BACK BECAUSE I HAVE TO CORRECT SEVERAL
12  DIFFERENT THINGS THAT WERE ASSERTED BY COUNSEL IN
13  CONNECTION WITH HIS ARGUMENT.
14          FIRST OF ALL, IN CONNECTION WITH ARTIST
15  AGREEMENTS AND AGREEMENTS BETWEEN RECORD LABELS AND
16  ARTISTS, THERE ARE, GENERALLY SPEAKING, TWO PROVISIONS
17  THAT GOVERN ROYALTIES. OURS IN THIS CASE IS EVEN BROADER
18  THAN IN MOST RECORD COMPANY CONTRACTS.
19          BUT IN THIS CASE, THE PROVISION STATES --
20  QUOTED IN SOME WAYS ACCURATELY BY OPPOSING COUNSEL --
21  THAT "ON MASTERS LICENSED BY US OR OUR LICENSEES TO
22  OTHERS FOR THEIR MANUFACTURE AND SALE OF RECORDS OR FOR
23  ANY OTHER USES, YOUR ROYALTY SHALL BE IN AN AMOUNT EQUAL
24  TO 50 PERCENT OF OUR NET RECEIPTS."
25          WHEN UNIVERSAL OR A RECORD COMPANY SELLS

1  RECORDS THEMSELVES, THEY PAY THE ARTISTS BASICALLY 12
2  PERCENT ROYALTIES; THAT'S ANOTHER PROVISION IN THIS
3  AGREEMENT.  HOWEVER, WHEN THEY LICENSE THOSE RECORDS TO
4  THIRD PARTIES -- LIKE THEY DO HERE -- THEY SPLIT THE
5  PROCEEDS 50/50.
6       WITH THE ADVENT OF THE DIGITAL AGE, THIS ISSUE
7  HAS COME TO THE FOREFRONT OF THE MUSIC INDUSTRY.  IN
8  FACT, THIS IS NOT THE ONLY CASE GOING ON WHERE THIS ISSUE
9  IS IN PLAY.  THERE'S A CASE INVOLVING SONY BMG IN THE NEW
10 YORK -- SOUTHERN DISTRICT OF NEW YORK INVOLVING CHEAP
11 TRICK AND THE ALLMAN BROTHERS WITH VERY SIMILAR ISSUES
12 BEING LITIGATED; AND THE POINT BEING THAT THESE ARTISTS
13 ARE BEING PAID AT 12 PERCENT RATHER THAN 50 PERCENT FOR
14 THESE DIGITAL DOWNLOADS.
15      AND THE ISSUE BECOMES WHETHER THESE DIGITAL
16 DOWNLOADS, WHETHER IT BE ITUNES, WHETHER IT BE
17 CONDITIONAL DOWNLOADS FROM SUBSCRIPTION AGREEMENTS,
18 WHETHER THEY ARE LICENSES FROM THE RECORD COMPANY TO THE
19 DIGITAL DOWNLOAD COMPANIES.  IT IS A VERY IMPORTANT
20 ISSUE.
21      MR. JOBS, IN CONNECTION WITH -- MR. JOBS, FIRST
22 OF ALL, SIGNED THE FIRST APPLE/UNIVERSAL AGREEMENT, AND
23 HE ISSUED THIS DOCUMENT, *THOUGHTS ON MUSIC*, WHERE HE SAYS
24 A COUPLE OF THINGS.  HE SAYS, "APPLE DOES NOT OWN OR
25 CONTROL ANY MUSIC ITSELF.  IT MUST LICENSE THE RIGHTS TO

1  DISTRIBUTE MUSIC FROM OTHERS, PRIMARILY THE BIG FOUR
2  MUSIC COMPANIES:  UNIVERSAL, SONY BMG, WARNER AND EMI."
3  HE GOES ON TO USE THE WORD "LICENSES" IN CONNECTION WITH
4  THEIR RELATIONSHIP, THE ECONOMIC REALITIES OF THE
5  AGREEMENTS BETWEEN THE RECORD COMPANIES AND HIS COMPANY.
6           IN THIS CASE THAT WE HAVE WHERE I'M LEAD
7  COUNSEL IN THE F.B.T. CASE, UNIVERSAL HAS STOOD UP AND
8  MADE JUST LAST WEEK THE VERY SAME ARGUMENT THEY ARE
9  MAKING HERE, THAT THE RELEVANT LANGUAGE IS SOLELY RELATED
10 TO THE AGREEMENT BETWEEN AFTERMATH AND BETWEEN F.B.T.
11 AND EMINEM.  IN FACT, THAT'S NOT CORRECT.
12          THE ISSUE IS, AS THE COURT IN THE CENTRAL
13 DISTRICT OF CALIFORNIA JUST HELD LAST WEEK ON A MOTION TO
14 NOT EVEN PROVIDE US THE NAMES OF THE NEGOTIATORS OF THE
15 DIGITAL AGREEMENTS -- THE RELEVANCE IS, "IS THE PARTIES'
16 AGREEMENTS BETWEEN THE DIGITAL DOWNLOAD COMPANIES AND THE
17 RECORD LABELS LICENSES?"  MR. JOBS HAS SAID IN A PUBLIC
18 STATEMENT THAT THEY ARE LICENSES.  AND THAT IS
19 POTENTIALLY -- WELL, IT IS -- AN ADMISSION REGARDING THE
20 ECONOMIC REALITY OF THE AGREEMENT THAT GOES --
21          THE COURT:  AS HE UNDERSTANDS HIS AGREEMENT.
22          MR. BUSCH:  AS HE UNDERSTANDS HIS AGREEMENT.
23 SO THAT'S WHY IT IS RELEVANT TO THIS CASE.
24          NOW, LET'S STEP BACK FOR A SECOND AND DISCUSS
25 WHAT THEY HAVE DONE IN SAYING THAT MR. JOBS SHOULD NOT BE

```
 1   DEPOSED.  THEY SUBMITTED AN AFFIDAVIT BY MR. SAUL.
 2   HOWEVER, THAT AFFIDAVIT IS COMPLETELY LACKING.  THERE IS
 3   NO AFFIDAVIT BY MR. JOBS SAYING HE HAS NO KNOWLEDGE.
 4   THERE IS NO AFFIDAVIT BY MR. JOBS SUGGESTING THAT THERE
 5   IS SOMEBODY ELSE IN THE COMPANY WHO COULD GIVE ANY EFFECT
 6   TO HIS WORDS IN HIS DOCUMENT THAT HE SUBMITTED PUBLICLY.
 7   THERE'S NO SUGGESTION THAT THERE'S ANYONE LOWER THAN
 8   MR. JOBS WHO COULD COMMENT ON HIS ESSAY.  IT MAKES SENSE,
 9   IT'S MR. JOBS' ESSAY; IT'S MR. JOBS' LANGUAGE.
10           WE SHOULD BE ENTITLED TO QUESTION MR. JOBS
11   ABOUT WHY HE USED THE LANGUAGE HE USED, WHY HE
12   CHARACTERIZED THE AGREEMENTS AS LICENSES, AND WHAT IS THE
13   ECONOMIC REALITY OF THESE AGREEMENTS BETWEEN APPLE AND
14   THE RECORD COMPANY?  THERE'S NO ONE ELSE -- THERE'S NO
15   SUGGESTION BY APPLE THAT THERE IS ANYONE ELSE.
16           NOW, WE ARE NOT TALKING ABOUT AN ALL-DAY
17   DEPOSITION, WE ARE TALKING ABOUT AN HOUR OR TWO.  SURELY,
18   MR. JOBS, WHO HAS REINVENTED APPLE THROUGH THESE
19   AGREEMENTS, AND WHO HAS -- WHO HE AND HIS SHAREHOLDERS
20   HAVE MADE BILLIONS OF DOLLARS THROUGH THESE AGREEMENTS,
21   CAN SIT DOWN FOR A DEPOSITION TO EXPLAIN A DOCUMENT THAT
22   HE SUBMITTED FOR AN HOUR OR TWO OF A DEPOSITION.  THERE'S
23   NO SUGGESTION HE DOESN'T HAVE KNOWLEDGE ABOUT IT, THERE'S
24   NO SUGGESTION THAT THERE'S ANYBODY ELSE WHO WOULD, AND
25   THERE'S NO SUGGESTION THAT THIS WOULD BE AN UNDUE BURDEN
```

1  JUST TO HAVE HIM SIT FOR AN HOUR OR TWO OF A DEPOSITION.
2           THE CASE LAW THAT WAS CITED BY APPLE ABSOLUTELY
3  DOES NOT SUPPORT THEIR POSITION ON THIS BECAUSE IT
4  DOESN'T DEAL WITH ANY CASE WHERE THE CEO SAYS -- DOESN'T
5  SUBMIT AN AFFIDAVIT, DOESN'T SAY, "I DON'T HAVE
6  KNOWLEDGE."  AND, IN FACT, IN THE *IOCOCA* CASE, THE COURT
7  SAID, "JUST BECAUSE YOU ARE A CEO, IF YOU HAVE KNOWLEDGE
8  THAT IS RELEVANT TO A CASE, YOU CANNOT AVOID THE JUDICIAL
9  PROCESS SOLELY BY YOUR POSITION."
10          THAT'S ESSENTIALLY WHAT'S HAPPENING HERE IS
11 THEY ARE ATTEMPTING TO CHARACTERIZE THIS LITIGATION IN A
12 WAY TO MAKE THE INFORMATION NOT RELEVANT WHEN IT CLEARLY
13 IS NOT ONLY RELEVANT, BUT POTENTIALLY OUTCOME
14 DETERMINATIVE, AND WE ARE ONLY TALKING ABOUT AN HOUR OR
15 TWO.  AND THEY HAVEN'T SUBMITTED AN AFFIDAVIT SUGGESTING
16 ANY LOWER-LEVEL PERSON WOULD HAVE OR COULD HAVE KNOWLEDGE
17 ABOUT MR. JOBS' ESSAY.
18          THE COURT:  IS THERE A LOWER-LEVEL PERSON?
19          MR. RILEY:  YOUR HONOR, THEY COULD TAKE A
20 30(B)(6), FOR EXAMPLE, OF APPLE ON A CONTRACT AND THE
21 ARRANGEMENTS BETWEEN APPLE AND UMG, IF THAT WERE DEEMED
22 RELEVANT.  BUT WHAT THEY ARE SEEKING IS MR. JOBS'
23 PERSONAL OPINION ABOUT THAT CONTRACT, HIS PERSONAL
24 OPINION.  HIS VIEWS ARE IRRELEVANT, AND WE HAVE CITED
25 NUMEROUS CASES THAT HAVE HELD AS SUCH.

```
 1            IF THEY ARE INTERESTED IN EXPLORING THE
 2   CONTRACTUAL RELATIONSHIP BETWEEN APPLE AND UMG, THEY HAVE
 3   THE CONTRACTS AND THEY COULD TAKE A 30(B) CORPORATE
 4   REPRESENTATIVE OR SOMEONE WHO ACTUALLY ADMINISTERS THOSE
 5   CONTRACTS WHO WAS INVOLVED.
 6            MR. JOBS IS NOT AN ATTORNEY, AND HIS OPINION
 7   ABOUT THAT CONTRACT IS IRRELEVANT TO THE CONSTRUCTION.
 8   IS IT A LICENSE OF A MASTER RECORDING OR NOT?  THAT'S THE
 9   ULTIMATE CONTRACTUAL ISSUE.  AND AS TO THAT, HIS PERSONAL
10   OPINION IS COMPLETELY IRRELEVANT UNDER THE LAW OF
11   CALIFORNIA.
12            SO POINTING TO THE ESSAY AND SAYING HE HAS
13   PERSONAL KNOWLEDGE OF WHAT HE WROTE, CLEARLY HE HAS
14   PERSONAL KNOWLEDGE OF WHAT HE WROTE; BUT THAT IS
15   IRRELEVANT.  THE REAL ISSUE IS WHAT IS THE CONTRACTUAL
16   OBLIGATION BETWEEN UMG AND APPLE?  AS TO THAT, THERE ARE
17   MANY OTHER HIGHLY PREFERABLE WAYS OF EXPLORING THAT
18   ISSUE.
19            THE COURT:  WELL, I THINK HE IS TELLING ME THAT
20   HE WRITES ABOUT SOMETHING AND HE ASSUMES WHEN HE WRITES
21   ABOUT IT HE KNOWS ABOUT IT AND HE HAS SOME UNDERSTANDING
22   OF WHAT HE WAS DOING, AND I DON'T THINK ANYBODY IN THIS
23   COURTROOM WOULD SAY THAT HE DOESN'T KNOW WHAT HE IS
24   DOING.
25            MR. RILEY:  ABSOLUTELY.
```

```
 1            THE COURT:  SO I'M NOT SURE I AGREE COMPLETELY
 2   WITH THAT.
 3            YOU WANT TO RESPOND?
 4            MR. BUSCH:  THE ONLY THING THAT I WOULD LIKE TO
 5   SAY IS THIS, YOUR HONOR:  I AM LEAD COUNSEL IN ANOTHER
 6   CASE INVOLVING APPLE WHERE THIS SAME ISSUE IS AT PLAY,
 7   AND I AM PROHIBITED FROM A PROTECTIVE ORDER IN THAT CASE
 8   FROM USING INFORMATION FROM ONE CASE IN ANOTHER CASE, SO
 9   I CAN'T DISCUSS WHAT WAS SAID OR WHAT WASN'T SAID.  I
10   WILL SAY THIS, HOWEVER --
11            THE COURT:  YOU ARE PIQUING MY CURIOSITY, BUT
12   YOU'RE NOT ALLOWED TO GO ANY FURTHER.
13            MR. BUSCH:  YES, YOUR HONOR.  WE DID DEPOSE A
14   MR. EDDY CUE IN THAT CASE IN CONNECTION WITH THIS
15   DOCUMENT.  MR. CUE IS NUMBER TWO OR NUMBER THREE AT APPLE
16   IN THIS AREA.
17            THE COURT:  SO YOU HAVE GONE DOWN THE LADDER ON
18   THIS?
19            MR. BUSCH:  IT WAS NOT ILLUMINATING.  THE POINT
20   IS, YOUR HONOR --
21            THE COURT:  MR. CUE SAID, "YOU HAVE TO TALK TO
22   MR. JOBS"?
23            MR. BUSCH:  I CAN'T SAY.
24            THE COURT:  AH.
25            MR. BUSCH:  MR. JOBS IS THE PERSON WHO AUTHORED
```

```
 1  THIS DOCUMENT.  WE ARE TALKING ABOUT AN HOUR OR TWO OUT
 2  OF HIS TIME.  HE IS A VERY SUCCESSFUL MAN; HE HAS MADE A
 3  LOT OF MONEY FOR HIS SHAREHOLDERS AND FOR APPLE IN
 4  CONNECTION WITH THIS AGREEMENT.  THIS IS A VERY IMPORTANT
 5  ISSUE.  WE ARE TALKING ABOUT NO MORE THAN TWO HOURS OF
 6  HIS TIME.
 7          HE HAS GOT TO EAT LUNCH, PROBABLY EATS
 8  BREAKFAST ONCE IN A WHILE, AND I WOULD SUGGEST THAT WE
 9  ARE NOT ASKING FOR TOO MUCH; AND WE SHOULD BE ABLE TO ASK
10  HIM ABOUT THIS DOCUMENT THAT HE AUTHORED, WHY HE USED THE
11  LANGUAGE HE USED, WHY HE CHOSE TO USE THE WORD "LICENSE"
12  OVER AND OVER AGAIN.
13          MR. RILEY:  YOUR HONOR --
14          THE COURT:  TWO HOURS.  HE GETS TWO HOURS ON
15  THE DEPOSITION OF MR. JOBS.
16          MR. BUSCH:  THANK YOU, YOUR HONOR.
17          THE COURT:  THANK YOU.
18          (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)
19                       ---oOo---
20
21
22
23
24
25
```

CERTIFICATE OF REPORTER

    I, JANA L. RIDENOUR, OFFICIAL REPORTER PRO TEM IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

    THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN <u>F.B.T. PRODUCTIONS, LLC AND EM2M, LLC, V. AFTERMATH RECORDS, INTERSCOPE RECORDS, UMG RECORDING, INC., AND ARY, INC.,</u> CASE NO. C 08-80040 RMW (PVT), DATED APRIL 29, 2008; THAT I REPORTED THE SAME IN STENOTYPE AND TRANSCRIBED THE SAME BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY AS HEREIN APPEARS.

    DATED THIS _19th_ DAY OF MAY, 2008.


*Jana L. Ridenour, CSR #9302*
JANA L. RIDENOUR, CSR
OFFICIAL REPORTER PRO TEM
LICENSE NUMBER C-9302

**ORIGINAL**

14